**Tillman Pat HOFFPAUIR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58707.**

Court of Criminal Appeals of Texas,
Panel No. 2.

April 2, 1980.

---

7. We have examined appellant's *pro se* brief and find the arguments contained therein to be without merit.

Wayne Peveto, Orange, for appellant.

Jim Sharon Bearden, County Atty. and Patrick A. Clark, Asst. County Atty., Orange, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

OPINION

CLINTON, Judge.

Indicted for the offense of murder, appellant was convicted of the offense of voluntary manslaughter and the jury assessed punishment at confinement in the Texas Department of Corrections for a term of five years notwithstanding appellant's sworn motion for probation.

Though appellant presents some sixteen grounds of error for our consideration, we need not reach each of these contentions. In his second ground of error, appellant advances the contention that the trial court erred in overruling his timely request for a copy of the grand jury testimony of witness Tillman Pat Hoffpauir, Jr., after the State had cross examined him from it in the presence of the jury. We agree and now reverse the judgment below.

Briefly stated, the record reflects that appellant shot and killed one Gerald Lacy on the evening of August 10, 1976 as Lacy opened the front door of the trailer where he was staying with his wife. Mrs. Lacy had previously been married to appellant and, after being married to the deceased for just a period of a few weeks, had filed for divorce from him. There was considerable testimony, primarily from Mrs. Lacy, that the deceased was an extremely cruel individual who had compelled her to marry him; had threatened to kill appellant and the children of his marriage to her as well as herself. The deceased earlier had even "kidnapped" his wife at gunpoint and forced her to accompany him to Louisiana. Additionally, there was ample testimony from which the jury could and very well did believe that the deceased was a heavy drinker whose disposition worsened as his consumption of alcoholic beverages increased, which was frequent.

Appellant raised the defensive issues of temporary insanity and self defense and in support of these theories, called, among others, his son, Tillman Pat Hoffpauir, Jr., as a witness. The witness testified that the first time he met the deceased, he formed the opinion that the deceased was intoxicated and heard him brag about how the pills he had in his possession "would keep you going." Their next encounter was when he was awakened by his mother and asked if he would accompany her to pick up the deceased in Bridge City inasmuch as he was drunk and there was some concern that he might be "picked up" by the police.

On cross examination, however, the following colloquy occurred:

Q: [By the prosecutor]: Tillman what kind of guy was Gerald when he was sober?

A: I don't recall ever meeting him when he was sober.

Q: *Do you recall your grand jury testimony?*[1]

A: No, sir.

At this juncture, defense counsel objected to any further cross examination of the witness regarding his grand jury testimony unless the defense was provided a copy of same. The trial court denied this request and the cross examination continued:

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

Q: My question to you was, how was Gerald when he was sober. *On page 34, line 17, this is you talking*, "Question: When he was sober, he was a pretty good guy? *Answer: He was a very good natured guy when he was sober, but he was just a sly character and couldn't control his emotions when he got drunk.*" *Do you remember that?*

A: *I don't believe I worded it that* [sic].

Q: *Well, this little lady took down what you said, and that is what you said.*[2]

At the close of this cross examination, defense counsel renewed his request to be furnished with a copy of the grand jury testimony of the witness because the prosecutor had cross examined the witness from it in the presence of the jury; the trial court again denied this request. Defense counsel then asked the trial court to read the witness's grand jury testimony to see if there were any other "inconsistent statements" and, if so, to furnish him with a copy of the testimony. Though this request was refused, the trial court did agree to make the grand jury testimony part of the appellate record for our consideration. On redirect, defense counsel asked the witness just one question:

Q: Now, Tillman, were you ever around Gerald Lacy when he was sober, or not under the influence of any type of drug?

A: No, sir, I don't believe I ever have.

The trial court, after conducting an *in camera* inspection of the witness's grand jury testimony denied the defense request to be furnished with a copy of same and ordered it sealed as part of this record.

▮ Turning to appellant's contention, it is well settled that the "use before the jury" rule entitles the defendant to inspect, upon timely request, any document, instrument or statement which has been used by the State *before the jury in such a way that its contents become an issue. Mendoza v. State,* 552 S.W.2d 444, 449 (Tex.Cr.App. 1977); *Haywood v. State,* 507 S.W.2d 756

(Tex.Cr.App.1974); *Howard v. State,* 505 S.W.2d 306 (Tex.Cr.App.1974). This Court has held that the definition of "use before the jury" includes showing a document to a witness who is on the stand, permitting a witness to identify a document, *or reading portions* of a document aloud to a jury. *Mendoza v. State,* supra. But counsel for the State must in some way inform the witness that the document or statement is being referred to during the examination. *Rose v. State,* 427 S.W.2d 609 (Tex.Cr.App. 1968).

▮ In the instant case, it is clear that the requisites of the "use before the jury" rule were met. Initially, there can be no question but that the State made use of the witness's grand jury testimony at trial. The prosecutor definitely let the witness know that he was referring to the grand jury testimony of the witness—the test of *Rose v. State,* supra at 611, in explicating *Sewell v. State,* 367 S.W.2d 349, 351 (Tex. Cr.App.1963). However, in citing *Sewell,* supra, and *White v. State,* 478 S.W.2d 506 (Tex.Cr.App.1972), the State contends that the contents of the grand jury testimony did not become an issue. We do not agree. As soon as the prosecutor asked the witness if he recalled his grand jury testimony, it became evident that the prosecutor believed he was laying a predicate for impeaching the witness before the jury with a prior inconsistent statement. After the witness stated that he did not recall his grand jury testimony, the prosecutor took his second step down the impeachment path by pointing out to the witness—*giving page and line number*—his prior testimony which he then purportedly read *verbatim* from the transcript. When the witness demurred by stating that he did not think he worded it that way, the prosecutor proclaimed that the court reporter "took down what [he] said, and that is what [he] said." The prosecutor's efforts had come full circle and the

**2.** The record reflects that the witness did not respond to the prosecutor's assertion that "that is what you said," as the prosecutor merely asked another unrelated question after making said assertion.

witness had been imperfectly impeached with a prior inconsistent statement.[3]

In *White v. State,* supra, while the prosecutor did look at some papers in questioning a defense witness he did not do so "in such a manner as the contents of the document became an issue" because he did not direct attention to the paper, did not exhibit or read aloud from it nor make any reference to indicate to the jury that it was being used as the basis for his interrogation. Here all of that was done and, further, the witness neither recalled his prior testimony nor agreed with what was read to him, the effect of which was that he had seen deceased when he was sober. Thus the responses of the witness to those questions made the contents of his grand jury testimony an issue.

*Walton v. State,* 386 S.W.2d 805 (Tex.Cr. App.1965) sheds more than a minimal amount of light on the instant proceeding. In *Walton,* the prosecutor cross examined a defense witness in the presence of the jury from a prior sworn statement. Additionally, the prosecutor, still in the presence of the jury, read certain portions of the prior statement and asked the witness if in fact he had made such statements. Certain portions of the statement differed materially from some of the testimony he had already given before the jury and the witness further denied making certain other portions of the statement which were read to him by the prosecutor before the jury. The sworn statement was not introduced into evidence and the defendant's timely request for a copy of the statement was denied by the trial court. Citing *Sewell v. State,* 367 S.W.2d 349 (Tex.Cr.App.1963) this Court stated:

> "Reversal will result, however, *without any showing of injury* for denial of the defendant's timely request or demand that he be permitted to inspect any document, instrument or statement which is

used in some way before the jury by which its contents becomes an issue such as . . . exhibit[ing] or read[ing] from or us[ing] [it] to question the witness in the jury's presence."

*Walton v. State,* supra at 806 (citations omitted).

Appellant, consonant with *Sewell* and *Walton* and their progeny, need not demonstrate that he suffered any injury from the trial court's denial of his request to be furnished with a copy of the witness's grand jury testimony. The trial court, therefore, erred in denying appellant's timely request for a copy of the witness's grand jury testimony. *Walton v. State,* supra.

For the error pointed out, the judgment is reversed and the cause remanded.

---

**3.** The impeachment was imperfect because the transcript of testimony before the grand jury was not authenticated, predicated, offered and admitted as an exhibit. The content of such a transcript is not proven by the assertion of counsel that "that is what you said," unless, of course, the witness confirms that he did so. Here, however, the prosecutor rhetorically asked "Okay?" and moved on to another matter; the jury no doubt concluded that the prior inconsistent statement had been made by the witness in his grand jury testimony.