Ben BYNUM, Appellant,

v.

The STATE of Texas, Appellee.

No. 760–86.

Court of Criminal Appeals of Texas, En Banc.

Feb. 15, 1989.

Rehearing Denied March 15, 1989.

George Whittenburg, David Mullin, Amarillo, Michael J. Hinton, Houston, and John Wheier, Amarillo, for appellant.

Randall L. Sherrod, Dist. Atty., John L. Davis, Asst. Dist. Atty., Canyon, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

The appellant was charged in a five count indictment with misapplication of fiduciary property. V.T.C.A.Penal Code § 32.45 (hereinafter § 32.45). He was found guilty by a jury of all five counts. The trial court thereafter assessed punishment at ten years confinement in the Texas Department of Corrections, probated for a period of ten years, plus a $5,000.00 fine.

The Seventh Court of Appeals affirmed the appellant's conviction in a published opinion. *Bynum v. State*, 711 S.W.2d 321 (Tex.App.—Amarillo 1986, *pet. granted*). The appellant's motion for rehearing was overruled in another published opinion. *Id.* We granted the appellant's petition for discretionary review on four grounds for review challenging the legality of his conviction.

The appellant was the county judge for Potter County, Texas. In the fall of 1983, the appellant and others formed an organization called the Citizens for Progress (CFP) whose purpose was to further passage of a bond election to finance the design and construction of a new Potter County district courts facility. The appellant was a key member of CFP, particularly with regards to acquiring contributions and sufficient financing to sustain the campaign for the bond election.

In order to finance the campaign by CFP, fund raising efforts, including personal solicitation, were necessary. As a key member of the effort to obtain passage of the bond election, the appellant was the recipient of many of the contributions for the benefit of CFP. The criminal proceedings against the appellant arose from allegations that the appellant cashed ten of these contribution checks without providing a proper accounting.

The first four counts of the indictment were identical except for the dates on which the offenses were alleged to have occurred.[1] The fifth count, comprising six paragraphs, alleged the separate offenses, although less than $200 each, were part of one scheme and continuing course of conduct and thus the aggregate amount was $200 or more but less than $10,000. The operative language of each count is exemplified by the following:

did then and there intentionally or knowingly, or recklessly misapply by dealing with property, namely: money, of the value of $200.00 or more but less than $10,000.00, *contrary to an agreement* under which the fiduciary, BEN BYNUM, held such property, in a manner that involved *substantial risk of loss* to the Citizen for Progress committee, the person for whose benefit said property was held, [1] by cashing contribution checks donated for the Citizens for Progress committee or [2] by failing to make and keep an account of such property or [3] by failing to make and keep an account of such property or by failing to deposit and remit for deposit such property in a bank account of the Citizens for Progress committee. [emphasis added]

### I.

Initially, the appellant challenges his conviction by contending that the court of ap-

---

1. Those respective dates are: Count I, November 4, 1983; Count II, November 14, 1983; Count III, January 19, 1983; and Count IV, November 14, 1983.

peals' interpretation of some of the language in V.T.C.A.Penal Code, § 32.45,[2] makes the statute overbroad and vague under the Texas and Federal constitutions.[3] More specifically, the appellant complains of the term "fiduciary," as well as the terms "contrary to an agreement" and "substantial risk of loss" as used within V.T.C.A.Penal Code, § 32.45.

In resolving the appellant's contention that the evidence was insufficient to prove "an agreement" or the existence of a "substantial risk of loss," the court of appeals found it necessary to define the meaning of those terms. Consequently, we will review the appellant's contention that § 32.45, supra, is unconstitutionally overbroad and vague given the definitions provided by the court of appeals. We will not, however, examine for the first time on a petition for discretionary review the appellant's contention that the word "fiduciary," as defined in § 32.45, contributes to the vagueness of the statute. See *Coplin v. State*, 585 S.W. 2d 734 (Tex.Cr.App.1979); *Showery v. State*, 678 S.W.2d 103 (Tex.App.—El Paso 1984, pet. ref'd).

In his attack on § 32.45, the appellant invokes two distinct constitutional theories. First, he argues the statute is overbroad. Or, more specifically, the court of appeals' definitions of the terms "contrary to an agreement" and "substantial risk of loss" renders § 32.45 overbroad. Second, he argues the statute is vague. Or, again, more specifically, the court of appeals' interpre-

tation of the terms "contrary to an agreement" and "substantial risk of loss" renders § 32.45 vague.

Relative to his first complaint, under this ground for review, it must be initially observed that an attack on a statute as being overbroad is normally and traditionally reserved for complaints concerning alleged First Amendment violations. In *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1981), the Supreme Court was called upon to determine the constitutionality of an Illinois village ordinance regulating the marketing and sale of certain drug related items. The Court made the following preliminary, significant comment: "In a facial challenge to the overbreath and vagueness of a law, the court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Id.*, at 494, 102 S.Ct. at 1191. In other words, "[a] statute is considered impermissibly overbroad if, in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment." *Clark v. State*, 665 S.W.2d 476 (Tex.Cr.App.1984).

However, even if the questioned statute proscribes both unlawful conduct and conduct protected by the First Amendment does not invariably mean that it will be considered overbroad in a constitutional sense. In the relatively recent case of *City*

2. V.T.C.A. Penal Code, § 32.45:
   (a) For purposes of this section:
   (1) "Fiduciary" includes:
   (A) trustee, guardian, administrator, executor, conservator, and receiver;
   (B) any other person acting in a fiduciary capacity, but not a commercial bailee; and
   (C) an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary.
   (2) "Misapply" means deal with property contrary to:
   (A) an agreement under which the fiduciary holds the property; or
   (B) a law prescribing the custody or disposition of the property.
   (b) A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves

substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.
   (c) An offense under this section is:
   (1) a Class A misdemeanor if the value of the property misapplied is less than $200;
   (2) a felony of the third degree if the value of the property is $200 or more but less than $10,000;
   (3) a felony of the second degree if the value of the property is $10,000 or more.

3. The appellant also challenges the court of appeals' determination that the evidence was sufficient to show that the appellant misapplied property contrary to an agreement. This contention is in many ways intertwined with the appellant's vagueness challenge of § 32.45, supra.

*of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), the Supreme Court stated that "[o]nly a statute that is substantially overbroad may be invalidated on its face." *Id.,* 107 S.Ct. at 2508.[4] The appellant does not allege how § 32.45, supra, improperly penalizes speech or conduct which is protected by the First Amendment. Indeed, such an assertion would be entirely groundless for the penal provision at issue criminalizes only the conduct of a fiduciary who misapplies the property of another with which he has been entrusted. The appellant's contention that § 32.45, supra, is impermissibly overbroad is without merit.

■■■ Embodied within his contention that the statute is overbroad, the appellant also argues that it is unconstitutionally vague. Unlike the claim of a statute being overbroad, a vagueness challenge is applicable to all criminal laws and not merely those that regulate speech. As a fundamental proposition, all criminal laws must give notice to the populace as to what activity is made criminal so as to provide fair notice to persons before making their activity criminal. The rationale for this is obvious: crimes must be defined in advance so that individuals have fair warning of what is forbidden. As the Supreme Court has stated: a lack of notice poses a "trap for the innocent ...," *United States v. Cardiff,* 344 U.S. 174, 176, 73 S.Ct. 189, 190, 97 L.Ed. 200 (1952) and "violates the first essential of due process." *Connally*

*v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).[5]

In examining a criminal statute for vagueness, one should ignore engaging in a mere rhetorical critique and instead focus the examination upon a concept of fairness. In other words, initially the inquiry must be whether the ordinary, law-abiding individual would have received sufficient information that his or her conduct risked violating a criminal law. This is what the Supreme Court meant in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), when it adopted a two part analysis:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Id.,* at 108–109, 92 S.Ct. at 2298–2299.

■■■ Relative to this vagueness challenge, the appellant has offered several scenarios which, he asserts, constitute violations of § 32.45.[6] However, the appellant

---

**4.** See also: Rotunda, et al, *Treatise on Constitutional Law: Substance and Procedure* (West Publishing Com. St. Paul, Minn., 1987) Vol. 3, p. 24.

**5.** The concept that prior notice of criminal offenses is essential to fundamental fairness in a democracy is, somewhat surprisingly, not of ancient vintage. The principle of "legality," or *nulla poena sine lege,* condemns judicial crime creation. The converse, or legislative crime creation, which is an essential element of notice, evolved from the literary and philosophical enlightenment movement in Europe between *c.* 1660 and *c.* 1770. Or, as it was known in England, the Age of Reason. In adopting many of the ideologies prevalent at this time, the emerging American nation elected to replace common law crimes with systematic legislative

enactment. Although the revolution in the formation of criminal laws was successful, even as late as the twentieth century some courts were still judicially enacting criminal offenses. For example, in *Commonwealth v. Mochan,* 177 Pa. Super. 454, 110 A.2d 788 (1955), the Court affirmed a misdemeanor conviction for making obscene telephone calls despite the absence of any statute prohibiting such conduct. For an excellent discussion on the evolution of legislative criminal law development see: Jefferies, *"Legality, Vagueness, and the Construction of Penal Statutes,"* 71 Va.L.Rev. 189 (1985).

**6.** For example, the appellant argues, "[p]resumably, if a son agrees to store his mother's lawn mower in a tool shed, but leaves it outside, he becomes a felon under section 32.45 even if no

overlooks the principle that when a statute undergoes a vagueness challenge, where no First Amendment rights are involved, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. As the Supreme Court has stated:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. [Footnotes omitted]

*Village of Hoffman Estates v. Flipside, Hoffman Estates,* supra, 102 S.Ct. at 1191. See also: *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Cr.App.1987); *Clark v. State,* supra. Accordingly, when challenging the constitutionality of a statute it is incumbent upon a defendant to show that in its operation the statute is unconstitutional to him in his situation; that it may be unconstitutional to others is not sufficient. *Briggs v. State,* supra; *Parent v. State,* 621 S.W.2d 796 (Tex.Cr.App.1981). Thus, the appellant's hypotheticals are of no value in examining his claim that § 32.45, supra, is unconstitutionally vague in this instance. Instead, we need only determine whether the statute is unconstitutionally vague as applied to the appellant's conduct.

■ The appellant's vagueness challenge centers on the definitions of "agreement" and "substantial risk of loss" provided by the court of appeals. Clearly, a statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Engelking v. State,*

750 S.W.2d 213 (Tex.Cr.App.1988); *Ahearn v. State,* 588 S.W.2d 327 (Tex.Cr.App.1979). Instead, as the court of appeals observed, the words or phrase must be read in the context in which they are used. Section 311.011(a) *Tex.Govt.Code.* Usually, the word or phrase must then be construed according to the rules of grammar and common usage. *Id.*

The court of appeals used these principles and looked to the common definitions from *Webster's Third New International Dictionary* (1976 ed.):

> Agreement: the act of agreeing or coming to a mutual agreement; a harmonious understanding or an arrangement (as between two or more parties) as to a course of action.

*Id.,* at 43.

> Substantial: constituting substance or not seeming or imaginary; or illusive, but real and true.

*Id.,* at 2280.

> Risk: the possibility of loss, injury, disadvantage, or destruction.

*Id.,* at 1961.

■ We will first assess the appellant's vagueness challenge of the phrase "substantial risk of loss" in light of his conduct. The appellant contends that the phrase is not defined in § 32.45, is not a commonly used phrase, nor is the phrase used elsewhere in the law. We note that the appellant neither objected to the charge on this ground nor was a specially requested charge submitted with a proposed definition of a "substantial risk of loss."

In *Casillas v. State,* 733 S.W.2d 158 (Tex.Cr.App.1986), this Court cited the Amarillo Court of Appeals' decision in *Bynum,* supra, and ultimately concluded that:

> The *Bynum,* supra, discussion of substantial risk of loss comports with that of the Model Code: a "real possibility" of loss is one, we believe, that exists but does not rise to the level of a substantial certainty. It need not have to be "un-

damage occurs. Or if any employee is told to cash a check for his employer, agrees to count carefully the amount received before surrender-

ing the check, and then forgets to count the money, the employee has become a felon under section 32.45, even if not a penny is missing."

likely" that the property will be recovered, but the risk of loss does have to be a positive possibility; we conclude that the risk must be, at least, more likely than not. *Casillas,* supra at 164.

Although this Court did not review the constitutionality of § 32.45 in *Casillas, supra,* our discussion of the meaning of substantial risk of loss is notable. The record clearly reveals that if the appellant had not been constantly reminded and confronted with the diversion of checks, CFP would not have recovered those funds. In general, the phrase "substantial risk of loss" is neither vague nor arbitrary. Moreover, when applied to the conduct of the appellant, as shown in the record, the phrase is not arbitrary or vague at all. The appellant's contention that the phrase "substantial risk of loss" is vague as applied to him is without merit.

■ Next, we will review the appellant's contention that the phrase "contrary to an agreement" as used within the context of § 32.45 is vague. As previously noted, the court of appeals applied the common dictionary definition in rejecting the appellant's contention that the evidence was insufficient to sustain his conviction. The appellant's primary contention is that given this definition of agreement, § 32.45 "allows for constant changes in the standard of criminal conduct depending upon the oral arrangements of private parties." (Appellant's brief, p. 19.) Consequently, the appellant argues that since the agreement is serving to define a criminal offense, this Court should require that the evidence be of a direct, definite and certain nature.

This contention is without merit. While § 32.45 does indeed criminalize the conduct of a fiduciary who misapplies property, contrary to a duty created by either an agreement or law, this standard is not everchanging. In fact, the standard is fixed. An individual charged with the responsibilities of a fiduciary with regards to specific property may not misapply the property. The property may be deemed misapplied only if it is handled in a manner giving rise to a substantial risk of loss and in contravention of an established duty to do other-

wise. *Showery v. State,* 678 S.W.2d 103, 108 (Tex.App.—El Paso 1984, *pet. ref'd*). The appellant's contention that private agreements give rise to an everchanging standard is groundless. The proscribed conduct remains the same. Only the particular duty owed changes with the private agreement or State law at issue in each case. The scope of the duty owed by the fiduciary is constant and any departure must be proven.

Applying the definitions offered by the court of appeals to the statute and then comparing the statute to the first consideration endorsed by the Supreme court in *Grayned v. City of Rockford,* supra, it is evident that § 32.45, supra, is quite clear in the conduct it proscribes. Consequently, the adequate notice requirement inherent in a claim of vagueness is satisfied because the appellant had "fair warning ...," *id.,* at 108, as to what conduct was prohibited. In other words, the ordinary, law-abiding individual would not be trapped by the statute's prohibition.

Relative to the second consideration one employs when judging a vagueness challenge, § 32.45, supra, does not permit arbitrary or discriminating enforcement. The statute adequately details the prohibited conduct to the extent that the enforcement of the statute would not be relegated to subjective interpretation. Stated another way: to determine whether a violation of the statute occurs does not necessitate resort to a subjective analysis which would invariably invite arbitrary conclusions. The language of the statute provides guidance to law enforcement authorities to such a degree that improperly motivated selective enforcement is obviated.

Accordingly, § 32.45 is not unconstitutionally vague, particularly with regards to the appellant's specific conduct. The interests of the criminal defendant are preserved, in that the State must prove beyond a reasonable doubt not only the existence of an agreement creating a duty but also an eventual breach of that duty. The appellant's vagueness challenge fails in light of the appellant's conduct.

## II.

In the appellant's next ground for review, it is alleged that there was insufficient evidence to prove beyond a reasonable doubt that the appellant "misapplied property contrary to an agreement under which the fiduciary, Ben Bynum, held such property." The appellant particularly questions the sufficiency of the evidence to prove that an agreement existed as alleged in the indictment. In addition, for the first time on appeal, the appellant also seeks review of sufficiency of the evidence with regards to several other matters.[7] The appellant did not seek review of these matters and the court of appeals correctly did not broaden its review of the sufficiency of the evidence to include these points. This Court will not consider a ground for review that does not implicate a determination by the court of appeals of a point of error presented to that court in an orderly and timely fashion. *Tallant v. State*, 742 S.W.2d 292 (Tex.Cr.App.1987); *Humason v. State*, 728 S.W.2d 363, 365, n. 4 (Tex.Cr.App.1987); *Arline v. State*, 721 S.W.2d 348, 353, n. 9 (Tex.Cr.App.1986). Consequently, we will examine the appellant's sufficiency of the evidence claim only to the extent that it seeks review of the court of appeals' finding that there was sufficient evidence of an agreement.

When reviewing the sufficiency of the evidence, a reviewing court is to view the evidence in the light most favorable to the verdict, resolve inconsistencies in the testimony in favor of the verdict and avoid any impermissible realignment and disregardance of evidence. *Moreno v. State*, 755 S.W.2d 866 (Tex.Cr.App.1988).

On November 4, 1983, a meeting was held for purposes of generating citizen support for the bond election. Shortly thereafter, Gene Gidel was appointed treasurer of CFP. Pat Cunningham, a Potter County Commissioner, testified that he specifically discussed with the appellant that all monies contributed to CFP would be turned over to the treasurer, Gene Gidel. . Cunningham further testified that this procedure was agreed upon by the entire committee, "because we needed someone to be accountable for the finances of the committee." Cunningham also testified that he had a specific discussion with the appellant with regard to accounting for campaign contributions and expenses. The expenses were to be accounted for by invoice, by verification of the validity of the expenditure, and payment paid by the treasurer. On cross-examination, Cunningham maintained that an agreement, albeit not written, had been reached as to how the funds were handled.

John McKissick, a local news reporter present at the November 4, 1983, organizational meeting, testified that the appellant stated that it was necessary to appoint a treasurer in order to "oversee funds coming in and going out from the committee." When asked if the appellant had said anything with regards to the handling of contributions, McKissick replied, "he and the commissioners would be taking the contributions, but then [they] would be turned over to whoever we elected as treasurer."

Gene Gidel, the campaign treasurer, testified that "everyone realized that the money was to be handled by the treasurer, that he was to receive the contributions and he was to write the checks, and keep a record." Several other members of the committee testified they assumed that all checks were to be turned over to the treasurer.

The record also reveals that the appellant had established an office procedure for ensuring that contributions were forwarded to the treasurer. Many contributions evidently were handled in this manner and were ultimately deposited with CFP. Obviously, those checks forming the basis of the prosecution did not. These checks were instead cashed by the appellant. The

---

7. The appellant also seeks review of the following:

(1) whether CFP was a legal entity capable of entering into an agreement or having fiduciary obligations owed to it;

(2) whether there was evidence sufficient to show that appellant was a member of CFP or a fiduciary for CFP at the time of the misapplications;

(3) whether CFP had fiduciary obligations owed to it by the appellant.

appellant gave three reasons for cashing the checks and setting aside such funds: (1) that as a key member of the campaign he incurred expenses necessitating his own personal petty cash fund; (2) to supplement the salary of the campaign coordinator pursuant to a personal agreement he had made with him; and (3) to pay off promissory notes which the appellant had personally executed on the campaign's behalf. Furthermore, he testified that he had preserved an accounting but had thrown it away upon the successful completion of the campaign.

The record reveals that the appellant was the only individual to set up such a petty cash fund other than Rick Potter, the campaign coordinator, whose petty cash fund was authorized and monitored by the treasurer. While most witnesses agreed that the appellant was functionally in charge of the campaign, none knew of the creation of his petty cash fund to cover the expenses he identified. Of all the campaign funds received, no one else handled contributions as did the appellant. In other words, the appellant was the only person who cashed campaign contribution checks without tendering them to the treasurer.

In addition, the appellant did not tell anyone that he was setting aside additional funds for the benefit of the campaign coordinator who was a professional fundraiser. Rick Potter did, however, indicate that the appellant had told him that he hoped to further supplement Potter's salary if funds remained at the close of the campaign. Unlike the appellant, Pat Cunningham, who was also personally obligated on the primary note, did not set aside any funds to pay off this obligation. Moreover, the appellant never told anyone during the course of the campaign that he was setting funds aside for such a purpose.

Despite the appellant conducting himself in a manner that suggests an agreement, he nevertheless, and rather contradictorily, contends that the evidence was insufficient to prove an agreement. While several witnesses testified that a specific agreement had not been established, several others did. The appellant apparently believes that

the witness must testify that "we agreed." We disagree.

■ As previously noted, the Legislature did not define "agreement" within § 32.45. Consequently, we must turn to the common definition. As the court of appeals noted, an agreement is a harmonious understanding or an arrangement, as between two or more parties, as to a course of action. *Bynum, supra,* at 323. There is nothing in § 32.45 which requires the agreement to be written. We find that there is sufficient direct and circumstantial evidence to prove beyond a reasonable doubt that the appellant and members of CFP had reached a harmonious understanding or arrangement as to the disposition of contributions received and payment of the expenses incurred.

Therefore, when viewed in a light most favorable to the verdict, we find the evidence sufficient to prove beyond a reasonable doubt that the appellant misapplied property contrary to an agreement under which he held such property. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### III.

Next, the appellant contends that the indictment prejudiced his substantial rights by failing to describe the money and checks that were the subject of each count and paragraph of the indictment.

As previously stated, the appellant was charged in a five count indictment with a misapplication of fiduciary property. Counts I through IV alleged a value of $200 or more but less than $10,000. Count V aggregated the violations of a value less than $200. The appellant thereafter filed a motion to quash the indictment which in pertinent part stated that:

> The defendant specifically excepts to the indefinite description of property as "namely: money." The indictment fails to describe the type and amount of currency allegedly misapplied. Further, the indictment fails to adequately describe the contribution checks allegedly cashed by drawer and amount.

This motion was denied. Shortly thereafter, however, and three weeks before trial, the State filed photostat copies of ten checks which the State intended to introduce relative to each count and paragraph of the indictment. These copies clearly indicate the drawer, payee, date, number and amount of each check. This list was given to the appellant.

At trial the State introduced each of the ten checks, copies of which had previously been filed with the clerk and given to the appellant. The appellant's notice complaint centers on the introduction of an eleventh check into evidence. Further, the appellant complains of testimony at trial concerning two additional checks cashed by the appellant. The existence of these checks only became apparent on the first day of trial. Neither of these checks was introduced at trial nor was either alleged in the indictment.

The appellant contends that the court of appeals erred in misapplying this Court's holding in *Adams v. State*, 707 S.W.2d 900 (Tex.Cr.App.1986). Relying on *Farabee v. State*, 368 S.W.2d 222 (Tex.Cr.App.1963), the appellant argues that the trial court erred in denying the appellant's motion to quash because the indictment failed to provide an adequate description of the checks that form the basis of the indictment. In *Farabee v. State, supra*, this Court reversed a conviction for theft because the indictment described the stolen property only as a check of the value of more than $50. The indictment did not show "by whom it was drawn, its date, amount of the check, the number, nor to whom it is payable ... [t]hat the check must be sufficiently described to identify it has been so frequently considered and the reason for the conclusion so thoroughly discussed that we deem it unnecessary to further treat the subject in this opinion." *Id.* at 223.

The court of appeals did not determine whether the rule in *Farabee v. State, supra*, was applicable. Instead, the court of appeals assumed *Farabee* applied, yet nonetheless held that the failure to describe the checks in the indictment did not have a significant impact on his ability to prepare his defense under *Adams, supra*. Initially, the State contends that *Farabee* has been sub silentio overruled by our decisions in *Martinez v. State*, 742 S.W.2d 687 (Tex.Cr.App.1987) and *Rovinsky v. State*, 605 S.W.2d 578 (Tex.Cr.App.1980).

Usually an indictment which tracks the language of the statute is legally sufficient and the State need not allege facts which are merely evidentiary in nature. *Daniels v. State*, 754 S.W.2d 214 (Tex.Cr.App.1988); *DeVaughn v. State*, 749 S.W.2d 62 (Tex.Cr.App.1988); *Moreno v. State*, 721 S.W.2d 295 (Tex.Cr.App.1986). In order to properly indict an accused for a criminal violation of § 32.45, *supra*, it is necessary to plead every essential element of the offense. An indictment for the misapplication of fiduciary property must allege that (1) a person (2) intentionally, knowingly, or recklessly (3) misapplies (4) property he holds as a fiduciary or property of a financial institution (5) in a manner that involves substantial risk of loss (6) to the owner of the property or to a person for whose benefit the property is held. Section 32.45, *supra*. In this case the indictment which charged the appellant with a criminal violation of § 32.45 was sufficient to confer jurisdiction in that it adequately charged an offense.

Although the indictment in this case sufficiently charged a criminal offense under § 32.45, the question is whether the appellant was entitled to further notice so as to adequately prepare his defense. *Adams, supra*, at 903. The issue was properly framed in *DeVaughn, supra*, in which we stated:

A motion to quash should be granted only where the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *Thomas v. State*, 621 S.W.2d 158, 163 (Tex.Cr.App.1981); *Lindsay v. State*, 588 S.W.2d 570 (Tex.Cr.App.1979); *Cruise v. State*, 587 S.W.2d 403 (Tex.Cr.App.1979); *Haecker v. State*, 571 S.W.2d 920 (Tex.Cr.App.1978); *Amaya v. State*, 551 S.W.2d 385 (Tex.Cr.App.1977). In the face of timely motion to quash an indictment,

the indictment must allege on its face the facts necessary to show that the offense was committed, to bar a subsequent prosecution for the same offense, and to give the defendant notice of precisely what he is charged with. *American Plant Food v. State*, 508 S.W.2d 598, 603 (Tex.Cr.App.1974), *citing, Terry v. State*, 471 S.W.2d 848, 852 (Tex.Cr.App.1971). Where the accused has raised the claim of inadequate notice by means of a timely motion to quash, this Court has held:

> 'The general rule is that a motion to quash will be allowed if the *facts* sought are *essential* to give notice. However, unless a fact is essential, the indictment need not plead evidence relied on by the State. *Smith v. State*, 502 S.W.2d 133 (Tex.Cr.App.1973); *Cameron v. State*, 401 S.W.2d 809 (Tex.Cr.App.1966). Moreover, when a term is defined in the statutes, it need not be further alleged in the indictment. *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex. Cr.App.1974); *May v. State*, 618 S.W. 2d 333 (Tex.Cr.App.1981).' [Emphasis in original]

As previously stated, the appellant's motion to quash specifically excepted to an indefinite description of the property which had allegedly been misapplied. The question is therefore whether the appellant's motion to quash sought facts which were essential to give notice. As evidenced by the rule in *Farabee, supra,* a check forming the basis of an indictment must be adequately described in terms of the drawer, payee, as well as the number and amount of the check. Despite the State's assertions to the contrary, there is nothing within our opinions in *Martinez, supra,* and *Rovinsky, supra,* which overruled this longstanding notice requirement.[8]

Consequently, the trial court erred in failing to grant the appellant's motion to quash. Since the defect in the indictment was a matter of "form" rather than "substance," *Janecka v. State*, 739 S.W.2d 813 (Tex.Cr.App.1987), the proper procedure to alleviate this difficulty would have been for the State to amend the indictment and set forth with sufficient particularity the property allegedly misapplied. *Id.* However, the State having failed to do so renders the indictment defective as to form. *Id.; Adams, supra.* It remains to be determined whether the defect prejudiced the substantial rights of the defendant. Art. 21.19, V.A.C.C.P. Our inquiry now must focus upon whether "in the context of the case, this had an impact on the defendant's ability to prepare a defense and, finally, how great an impact." *Adams, supra,* at 903.

The court of appeals, having assumed *Farabee* error, concluded that any notice deficiency in the indictment was cured by the State's action, (to-wit: tendering the copies of the ten checks supportive of the indictment's allegations); thus, the notice defect had no significant impact on appellant's ability to prepare his defense. The appellant's motion for rehearing contended that the court of appeals misstated the record because the State in fact introduced an eleventh check into evidence and offered into evidence that appellant had cashed two additional checks which were cashed at a liquor store. In overruling the appellant's motion for rehearing the court of appeals concluded that the eleventh check was admitted as an extraneous offense because it was part of a single continuous transaction. In addition, the court

---

8. In *Martinez, supra,* we only stated that in a case involving misapplication of fiduciary funds the manner in which the misapplication was accomplished is an evidentiary fact only and need not be plead. In other words, the indictment itself was not fundamentally defective or void. *Martinez* did not involve a proper motion to quash for failure to adequately describe an essential fact on notice grounds.

*Rovinsky, supra,* is totally inapplicable to the present issue. In that case, the defendant's motion to quash claimed that the indictment for theft of over $10,000 failed to allege the proper value of stolen property. Although the defendant's motion at trial did not comport with the ground for review raised on appeal, we noted that this description was sufficient as to value and description. *Id.,* at 581. The State fails to note that the stolen property consisted of cash not checks as in the present case.

of appeals pointed out that the two other checks were offered for "ancillary purposes." *Bynum,* at 327. Final disposition of this ground for review requires a greater explanation of the events surrounding the introduction of this evidence.

The existence of the two checks that were cashed at a liquor store did not become known to the State until the first day of trial. After reviewing the appellant's entire direct testimony, it is apparent that the appellant left the distinct impression that the only checks he cashed were those which the State had introduced as supportive of the indictment (as well as the eleventh check). This was consistent with the appellant's assertion that he had kept an accurate accounting of the contribution checks he cashed. The following is a brief example:

> [Defense counsel]: Now you tendered these checks to Mr. Gidel at the time you tendered the check—to your knowledge, were there any other checks that you had not accounted for in tendering that 1,600 dollar amount?
>
> [Appellant]: Not that I recalled.

On cross-examination of the appellant, the State asked:

> Q  Ben, you made a statement in here a couple of times, I believe, that out of these checks that you collected, to the best of your recollection or whatever, that's all the money, that it's all been accounted for. Is that correct?
>
> A  I said to the best of my knowledge it was. I'm not sure it's all, but I think it's very close.
>
> Q  I want you to think about that and I want you to take your time right now and I want you to tell this jury if there's any others that have not been accounted for for the Citizens for Progress.
>
> A  Randy, all I know is that it's all I remember. It's all Mr. Cunningham remembers and it's all apparently that Mr. Gidel remembers. I don't know. I'm not sure of anything.

Following some additional questioning, the prosecutor returned to the subject of the appellant cashing contribution checks.

Then the prosecutor asked if the appellant knew a certain subpoenaed witness and whether the witness had cashed any checks for him that had been made payable to the CFP. The appellant responded as follows: "Not that I recall, but since you have subpoenaed him for a witness and since my attorneys have talked to him, I've been informed that I cashed two very small checks at the hospitality house, if that's what you're getting to, yes."

Given the entire tenor of the appellant's testimony, two things are readily apparent. First, the appellant undoubtedly opened the door to such an inquiry by the State. *Prescott v. State,* 744 S.W.2d 128 (Tex.Cr.App. 1988). The appellant left a false impression before the jury as to the extent he had cashed contribution checks. The State was clearly entitled to dispel this false impression. However, copies of these checks were never introduced into evidence. Second, it was actually the appellant who first referred to the two checks, albeit in anticipation of the State's forthcoming inquiry.

After examining the circumstances surrounding the testimony concerning the two liquor store checks, the State would not have been required to list these checks even if the trial court had properly granted the appellant's motion to quash. Within the context of this case the failure to properly grant the appellant's motion to quash had absolutely no impact on the appellant's ability to prepare a defense. In *Janecka v. State,* supra, on the appellant's motion for rehearing, we remanded the case to the trial court for a retrospective hearing on whether the defendant could demonstrate harm in light of the defective indictment. This rather unusual action was taken because *Adams v. State,* supra, was decided after the defendant's conviction. In *Janecka,* supra, the Court reasoned that at the time the trial court heard and determined the motion to quash there was no obligation on the defendant to show he was harmed by the failure of the indictment to provide sufficient notice.

A remand in this case is not similarly necessary because it is undisputed that the appellant received the information he was

seeking in his motion to quash substantially prior to trial. Because the appellant received what he wanted, albeit not in the form he desired, he did get it nonetheless. This type of informal notice was expressly approved in *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980) *overruled, Janecka v. State*, supra, when discussing the necessity of identifying the victim "in the course of offense," Judge Clinton, writing for the majority, stated something that should be repeated: "... a simple and easy manner is statutorily provided for curing a defect of form before announcement of ready, the reluctance of a trial judge to require or the resistance of a prosecuting attorney to make the amendment that is responsive to a motion or exception as to form is most difficult to understand. Alternatively, a statement in the record apprising the accused of the name of the victim of the 'in-the-course-of-offense' should suffice to show notice was given. [Citation omitted]" *Id.*, at 295, fn. 5.

We now turn to the eleventh check. This Court has no way of knowing why the appellant was not also indicted for misapplying the funds represented by this check. Yet that is of no consequence. The existence of this check was unavoidably necessary in order to explain what transpired. After having been confronted by Cunningham after the bond election concerning the missing contribution checks, the appellant agreed to write a check to CFP representing those checks which Cunningham insisted had been cashed improperly. The itemization of the $1600 check written by the appellant to cover cashed checks included the amount of the eleventh check. Without evidence of this check the jury would have been unnecessarily confused about how the total amount was calculated.

Our inquiry therefore centers upon notice and the appellant's ability to prepare his defense. Given the State's tender of the ten checks supportive of the indictment and the appellant's testimony at trial we simply cannot see how the failure to grant the appellant's motion to quash had any bearing on the appellant's ability to prepare his defense. Even if the eleventh check was improperly admitted it was

harmless beyond a reasonable doubt. Rule 81(b), Tex.R.App.Pro.

## IV.

In his last ground of error, the appellant contends that he was improperly denied access to the grand jury testimony of Pat Cunningham. The appellant argues that Cunningham was the appellant's primary accuser and the State's chief prosecution witness. At a hearing outside the presence of the jury, the State stipulated that Cunningham had been given a transcript of his previous grand jury testimony and had used that testimony to refresh his memory before testifying in court during trial of the case. Cunningham apparently did not use his grand jury testimony to refresh his recollection during direct examination by the State before the jury. The appellant's requested disclosure of Cunningham's grand jury testimony for purposes of cross-examination was denied.

For purposes of the appeal, the relevant portions of the grand jury transcript were ordered sealed by the trial judge and included within the record. The court of appeals held that the appellant failed to show that the trial court abused its discretion in denying access to the grand jury testimony. The court of appeals further found that after examining the testimony, the appellant was not harmed by the trial court's refusal to allow him to inspect it, although "slight and insignificant" inconsistencies were noted. *Bynum, supra*, at 326.

It is well established that the production of grand jury testimony lies within the sound discretion of the trial court. *McManus v. State*, 591 S.W.2d 505, 523 (Tex. Cr.App.1979). In order to circumvent the traditional policy of grand jury secrecy the accused must show that either a special reason or particularized need exists before an inspection of the grand jury proceedings will be allowed. *McManus, supra; Mott v. State*, 543 S.W.2d 623 (Tex.Cr.App.1976); *Nelson v. State*, 511 S.W.2d 18 (Tex.Cr. App.1974). In order to show error, the *accused must show that the trial judge's*

failure to order production of the grand jury testimony constitutes an abuse of discretion in light of the particular need that was shown. Such error is reversible unless the reviewing court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment. Rule 81(b)(2) Tex.R.App.Pro.

In preserving this ground of error, the appellant initially notes that the State had full use of the appellant's grand jury testimony and used it extensively during its cross-examination of the appellant. The appellant does not complain that the State failed to tender a transcript of the appellant's grand jury testimony following its use before the jury on cross-examination. Instead, the appellant merely argues that the appellant's grand jury testimony was used by the prosecution, not only to prepare its case, but also to vigorously question the appellant concerning several statements made before the grand jury. Therefore, the appellant argues that he should likewise be given the opportunity to review the grand jury testimony of his chief accuser.

While the practice of allowing the State unfettered use of the grand jury testimony prior to and during trial is certainly advantageous to the State, we are not inclined to hold that the existence of this advantage necessitates similar unfettered use by the appellant. In any case, the appellant did receive access to his grand jury testimony. To hold as the appellant desires, would require the State to furnish the defendant with the grand jury testimony of every witness.

The appellant cites two cases in which this Court held that when the State uses the testimony of a witness before the grand jury to refresh the witness's memory at trial, the failure to make the grand jury testimony available to the defendant for cross-examination constitutes reversible error. *Kirkland v. State*, 86 Tex.Crim. 595, 218 S.W. 367 (1920); *Green v. State*, 53 Tex.Crim. 490, 110 S.W. 920 (1908). The appellant relies on the language within these opinions emphasizing that if a witness uses a memorandum or some other

material to refresh his recollection prior to or during trial testimony, the same should be tendered to the accused. The appellant argues that no justification exists for differentiating between the witness who refreshes his recollection with a document immediately prior to testifying and the witness who does so while testifying.

On the other hand, the State contends that the cases cited by the appellant are examples of the "use before the jury" rule. The "use before the jury" rule entitles the accused to inspect, upon timely request, any document, instrument or statement which has been used by the State before the jury in such a way that its contents become an issue. *Hoffpauir v. State*, 596 S.W.2d 139 (Tex.Cr.App.1980); *Mendoza v. State*, 552 S.W.2d 444 (Tex.Cr.App.1977); *Haywood v. State*, 507 S.W.2d 756 (Tex.Cr.App.1974). The "use before the jury" rule has been held to include showing a document to a witness who is on the stand, permitting a witness to identify a document, or reading portions of a document aloud to a jury. *Hoffpauir, supra,* at 141; *Mendoza, supra,* at 449. Obviously, the "use before the jury" rule is broad and a situation involving a witness who uses a document to refresh his recollection during trial is but one example. In other words, the principles surrounding a witness who has refreshed his recollection during trial stand on independent grounds.

The differing viewpoints of the appellant and State as to the foundation of our opinions in *Kirkland, supra* and *Green, supra,* is noteworthy. The appellant relies on those aspects emphasizing the ramifications which arise when a witness has refreshed his recollection. The State, however, argues that these cases are only indicative of a use before the jury. Simply put, the question is whether an accused has shown a particularized need for a transcript of a witness' grand jury testimony if that witness has used that testimony to refresh his recollection prior to trial.

In *McManus, supra,* we held that the defendant failed to show a particularized need for the grand jury testimony of a witness who had reviewed the testimony

before testifying so as to reflect that the trial court abused its discretion in refusing to order its production. *Id.*, at 523.

■ The existence of a particularized need is dependent upon the totality of the circumstances. While Cunningham was the appellant's primary accuser and the State's chief witness, this alone is insufficient to show a particularized need. What is troubling, however, is the practice of allowing a testifying witness to review his grand jury testimony prior to trial, without also allowing the defendant to review the testimony. This factor certainly militates in favor of a showing of particularized need. But cf. *McManus, supra.* However, the appellant has otherwise made no showing of a particularized need or special reason for such testimony. Inconsistencies alone do not establish the existence of a particularized need or a special reason. *Mott, supra,* at 625.

Despite our reservations concerning this practice and opposition to it, we are constrained to agree with the court of appeals that the trial court's refusal to give the appellant access to Cunningham's grand jury testimony did not constitute an abuse of discretion. But see, *Bryant v. State,* 397 S.W.2d 445 (Tex.Cr.App.1965). Although the court of appeals noted that there were slight inconsistencies between Cunningham's trial testimony and his grand jury testimony, these differences were largely attributable to dates and times. The appellant was free to question Cunningham on cross-examination with regards to any confusion surrounding these dates. Although it is a very close question, we hold that the trial court did not abuse its discretion. *Mott, supra,* at 625; *Garcia v. State,* 454 S.W.2d 400 (Tex.Cr.App.1970).

Furthermore, although the better practice is to grant the defendant access to grand jury testimony which is reviewed by a witness prior to trial, it would have been of no avail to the appellant. After reviewing the testimony, there were no inconsistencies between Cunningham's grand jury and trial testimony relative to the chain of events surrounding the appellant's indictment and conviction. *McManus, supra,* at

523; *Brown v. State,* 475 S.W.2d 938 (Tex. Cr.App.1971). If the appellant had been given access to Cunningham's grand jury testimony it would not have altered the jury's verdict. Accordingly, we conclude beyond a reasonable doubt that the failure of the trial court to give the appellant Cunningham's grand jury testimony did not contribute to either the conviction or the punishment. Rule 81(b)(2) Tex.R.App.Pro. The appellant's final ground for review is overruled.

The judgment of the court of appeals is affirmed.

TEAGUE, J., is constrained to concur in the ultimate decision the majority opinion reaches, that the judgment of the court of appeals is affirmed.

MILLER, Judge, dissenting.

I dissent to the majority's disposition of appellant's last ground for review. The issue, as the majority correctly points out, is whether an accused has shown a particularized need for a transcript of a witness's grand jury testimony, if that witness has used that testimony to refresh his recollection prior to trial. The majority concludes, by implication, that appellant did not show a particularized need when it wrote "the trial court's refusal to give the appellant access to Cunningham's grand jury testimony did not constitute an abuse of discretion." At p. 783.

Historically, we have held that it is within the sound discretion of the trial court when the defendant may be permitted to inspect grand jury testimony. See *McManus v. State,* 591 S.W.2d 505, 523 (Tx. Cr.App.1979) and cases cited therein. The criteria that has been repeatedly, albeit left unexplained, articulated are whether the defendant has shown "some special reason" or "particularized need." The majority finds:

The existence of a particularized need is dependent upon the totality of circumstances. While Cunningham was the appellant's primary accuser and the State's chief witness, this alone is insufficient to show a particularized need. What is troubling, however, is the practice of al-

lowing a testifying witness to review his grand jury testimony prior to trial, without also allowing the defendant to review the testimony. This factor certainly militates in favor of a showing of particularized need. [citation omitted] However, the appellant has otherwise made no showing of a particularized need or special reason for such testimony. Inconsistencies alone do not establish the existence of a particularized need or a special reason. [citation omitted]

I disagree that this does not establish a particularized need.[1]

Over two decades ago the United States Supreme Court addressed what constitutes a showing of particularized need when a defendant attempts to obtain transcripts of grand jury testimony. The Supreme Court in *United States v. Procter & Gamble Company*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958) stated:

> We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, *to refresh his recollection*, to test his credibility and the like. *Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly.* (emphasis added)

The intent of the appellant in this case was to see the information that the chief prosecution witness utilized to refresh his recollection. It is apparent that the United States Supreme Court views this one factor alone as a sufficient demonstration of a particularized need. I would also find that where the grand jury testimony is from the States's key witness appellant has shown a particularized need.

To preclude the limited access to relevant or potentially relevant grand jury testimony flies in the face of every notion of justice. As the United States Supreme Court stated:

> [I]t is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked. In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations.

*Dennis v. United States*, 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966).

For these reasons, I respectfully dissent.

CLINTON, J., joins.

---

**1.** It strikes me as the height of illogic to expect a defendant to ascertain inconsistencies in grand jury testimony when theoretically it is secret and unattainable by the defendant. Requiring the accused first to show inconsistencies between the grand jury testimony and the witness's testimony at trial in actuality denies the accused evidence that is material and relevant to his defense. Therefore, I would not require appellant to show any inconsistencies between the witness's grand jury and trial testimony to show particularized need.