Rodolfo ACOSTA, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–96–00289–CR.

Court of Appeals of Texas, El Paso.

June 4, 1998.

Enrique Medrano, El Paso, for Appellant.

Jose R. Rodriguez, County Attorney, San Antonio, for State.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION ON MOTION FOR REHEARING

LARSEN, Justice.

This court's opinion of September 25, 1997 is withdrawn and the following is substituted. Appellant's motion for rehearing is overruled.

This is an appeal from a conviction for the offense of illegal dumping. After a bench trial, the trial court found appellant Rodolfo Acosta guilty and sentenced him to 30 days in jail and a $500 fine. The court suspended the jail sentence and $300 of the fine for one year.

### FACTS

Acosta was convicted of the Class A misdemeanor offense of illegal dumping.[1] He raises four points of error on appeal. In three points, he challenges the sufficiency of the evidence to support the conviction. We find he has waived his evidentiary complaints by testifying at the punishment phase of trial as follows:

> THE PROSECUTOR: Do you acknowledge now that what you did was wrong and that you broke the law of the State of Texas?
>
> ACOSTA: Yes. The Judge has said it so I accept it.

In our opinion of September 25, 1997, we held that this testimony waived any error under the *DeGarmo* doctrine.[2] That theory

---

1. *See* TEX. HEALTH & SAFETY CODE ANN. § 365.012(a) and (f)(2) (Vernon 1992 & Supp.1998).

2. *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex. Crim.App.1985), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985).

of law states that if a defendant testifies at the punishment stage of the trial, and admits his guilt to the crime for which he has been found guilty, he has, for legal purposes, entered the equivalent of a plea of guilty.[3] By admitting guilt, the defendant waives all non-jurisdictional errors occurring at the guilt-innocence phase of the trial, including challenges to the sufficiency of the evidence.[4] The Court of Criminal Appeals recently confirmed the continuing viability of the *DeGarmo* doctrine in *McGlothlin v. State.*[5] We think that the unambiguous nature of Acosta's testimony clearly disposes of his sufficiency of the evidence claims. We therefore overrule points of error two, three and four.

### DeGarmo and Constitutionality Challenges

■ In his motion for rehearing, however, Acosta urges that his constitutional vagueness argument should not be disposed of under *DeGarmo*. He argues that the underlying rationale for *DeGarmo* waiver—that where a defendant has admitted guilt, the purpose of the trial has been served and the truth has been determined—does not apply where the defendant is challenging the constitutionality of the statute under which he is convicted. We are persuaded by this reasoning, concluding that *DeGarmo* waiver, although having its place, should not always preclude a review of issues raised for appellate review. We find that Acosta's admission that he "broke the law of the State of Texas"

has no bearing on that law's constitutionality.[6] We will therefore examine Acosta's constitutional claim on the merits.

### Constitutionality of Dumping Statute

■ In his first point of error, Acosta contends that the provision of the Texas Health and Safety Code under which he was convicted is impermissibly vague, violating the Fourteenth Amendment to the United States Constitution and the Due Course of Law provision of the Texas Constitution. At the outset, we note that Acosta has failed to provide any substantive analysis and argument in separate grounds on his allegations pursuant to the Texas Constitution. Briefs asserting rights under the Texas Constitution are inadequate if they fail to provide either argument or authority in support of the assertion. Accordingly, we will address only Acosta's federal constitutional arguments.[7]

■ A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. Usually, the words are to be construed according to the rules of grammar and common usage.[8] As a fundamental proposition, all criminal laws must give notice to the populace as to what activity is made criminal[9] because lack of notice poses a trap for the innocent.[10] Our inquiry in determining whether a criminal law is vague is two fold. First, we must

3. *Id.*

4. *Id.*

5. 896 S.W.2d 183, 186 (Tex.Crim.App.1995).

6. We believe that *DeGarmo* waiver must be carefully applied. For example, where the trial court has erroneously denied the defendant's motion for directed verdict, one author believes it violates the guarantees against double jeopardy to examine any evidence following the motion, including a *DeGarmo* admission at punishment. *Herbert v. State*, 827 S.W.2d 507, 509–10 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (Cohen, J. concurring); *Winter v. State*, 725 S.W.2d 728, 731–34 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (Cohen, J. concurring). Moreover, some defensive theories require an admission that the act constituting the offense was committed: self-defense, defense of a third party, and entrapment all require admission of an act which, absent the defense, would be a crime. Similarly, a defen-

dant raising a lesser-included offense may admit all elements of the offense save the mental state required. Should review of these issues be precluded if a "confession" ensues? *Avila v. State*, 954 S.W.2d 830, 835–36 (Tex.App.—El Paso 1997, pet. pending). Suppression issues, likewise, do not turn on the defendant's commission of the offense, but on the misconduct of officials. Should a judicial admission preclude such review? These are all questions which *DeGarmo* itself does not address.

7. *Gibson v. State*, 921 S.W.2d 747, 764 (Tex. App.—El Paso 1996, pet. denied).

8. *Bynum v. State*, 767 S.W.2d 769, 773–74 (Tex. Crim.App.1989).

9. *Id.* at 773.

10. *United States v. Cardiff*, 344 U.S. 174, 176, 73 S.Ct. 189, 190, 97 L.Ed. 200, 202 (1952).

determine whether the law gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Second, we must determine if the law provides adequate standards to those who enforce it so that it cannot be arbitrarily and discriminatorily applied.[11]

■ Acosta contends that the statutory definition of "solid waste" in the Texas Health and Safety Code is unconstitutionally vague. The State alleged Acosta violated the Code, in pertinent part, by knowingly and intentionally disposing of, or allowing or permitting the disposal of, "litter or other solid waste for a commercial purpose, to wit: Dirt, Rock, . . . ." Section 365.012(a) of the Health and Safety Code prohibits "disposal of litter or other solid waste at a place that is not an approved solid waste site, including a place on or within 300 feet of a public highway, on a right-of-way, on other public or private property, or into inland or coastal water of the state."[12] The statutory definition of the term "solid waste" excepts "soil, dirt, rock, sand, and other natural or man-made inert solid materials used to fill land if the object of the fill is to make the land suitable for the construction of surface improvements."[13] Acosta argues that the exception for dirt and rock used to fill land renders the statutory definition of "solid waste" unconstitutionally vague because the phrase "used to fill land" is undefined and susceptible to varying interpretations.

■ In reviewing a vagueness challenge where no First Amendment rights are involved, we need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct.[14] Thus, in this case, we must determine whether the statutory definition of "solid waste" including the exception for dirt and rock "used to fill land" gives adequate notice such that a person of ordinary intelligence would have reasonable opportunity to know

that the specific conduct in which Acosta engaged was prohibited.

Acosta testified that he and his son used his pickup truck to take dirt from a home under construction to another construction site. They started unloading the dirt near a spot where there was "a big bunch of dirt . . . that the machines were bringing." Acosta and his son did not place the dirt and rock directly on a construction area in order to "make the land suitable for the construction of surface improvements." Nor was there evidence in the record that the "big bunch of dirt" already at the construction site was to be used as fill. According to Acosta's own testimony, he and his son merely left the dirt and rock near some that was already there. We do not find that a person of ordinary intelligence would mistake the specific statutory exception for fill dirt as an open invitation to dump dirt and rock at any convenient construction site. Accordingly, we overrule Acosta's first point of error.

### CONCLUSION

Having overruled each of Acosta's points of error, we affirm the judgment of the trial court.

---

**11.** *Bynum,* 767 S.W.2d at 773 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

**12.** Tex. Health & Safety Code Ann. § 365.012(a) (Vernon 1992 & Supp.1998).

**13.** Tex Health & Safety Code Ann. § 361.003(35)(A)(ii) (Vernon Supp.1998).

