**Gary Lynn McGEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–93–01091–CR, 01–93–01092–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 17, 1995.

Rehearing Overruled Sept. 14, 1995.

---

John B. Holmes, Jr., Roger A. Haseman, Houston, for appellant.

Before COHEN, WILSON and HEDGES, JJ.

## OPINION

COHEN, Justice.

Appellant pleaded no contest to violating two sections of the water code, and the trial judge assessed an agreed punishment of four days in jail and a $2500 fine in each case. We affirm.

The evidence consists solely of the following stipulated facts:

1. On April 27, 1993, the Defendant, Gary Lynn McGee, was an employee for the Big Chief Services, Inc., a company which cleans out grease traps and septic tanks for a fee through the use of vacuum trucks.

2. On April 27, 1993, the defendant went to a Fiesta supermarket in Houston Harris County, Texas for the purpose of removing grease trap material from the store's grease trap. Prior to removing the store's grease trap material, the defendant introduced contained wastewater into a sanitary sewer line leading to a City of Houston publicly owned treatment plant. The contaminated wastewater came from the defendant's vacuum truck, and was discharged from a hose connected to the truck.

3. The defendant had no authorization from the City of Houston, the State of Texas, or the U.S. Environmental Protection Agency to introduce such contaminated wastewater into said sanitary sewer line.

4. The contaminated wastewater from the vacuum truck contained oil and grease, which must be transported to a licensed facility for disposal. The contaminated wastewater introduced into the sanitary sewer line on April 27, 1993 consisted of approximately 94% water and 6% oil and grease, and constitutes "industrial waste" within the meaning of the Texas Water Code.

5. Oil and grease is present in wastewaters generated by commercial establishments, such as restaurants and su-

permarkets. Grease traps are flow-through separation devices used to separate most oil and grease from wastewaters introduced into municipal sanitary sewer lines from these commercial establishments.

6. Publicly owned treatment plants are capable of treating oil and grease constituents in wastewaters, provided the volume and concentrations of oil and grease present are not too great. However, the collection systems at these plants may have troubles with even small amounts of oil and grease if there exists an accumulation of oil and grease. This "accumulation affect" could result in an "upset" at the plant, which could eventually shut down the treatment plant.

7. The publicly owned treatment plants discharge treated wastewaters into the waters of the state under the authority of discharge permits issued by the Texas Natural Resource Conservation Commission (formerly the Texas Water Commission), and the U.S. Environmental Protection Agency. Such permits regulate the amount of oil and grease discharged into the waters of the state from publicly owned treatment plants.

8. There is no evidence of any upset or violative discharge at the downstream publicly owned treatment plant resulting from the Defendant's actions on April 27, 1993.

9. The Texas Natural Resource Conservation Commission has not required and does not require state discharge permits or any other form of state authorization for the introduction of wastes into publicly owned treatment plants operated by Texas municipalities. However, a person must obtain permission from the owner of a publicly owned treatment plant to discharge into a publicly owned treatment plant.

10. The City of Houston did not issue authority for the Defendant to introduce wastewater into the City's publicly owned treatment plant, nor the Defendant possess permission or authority from any other source.

In points of error one and two, appellant contends the judge erred by denying his motions to dismiss the informations because both alleged that he discharged industrial waste into and adjacent to water in the state, and, as a matter of law, a sanitary sewer line is not within the statutory definition of "water in the state."

In cause no. 93–17717, the information alleged an offense under Tex.Water Code Ann. § 26.2121(a) (Vernon Supp.1995), as follows:

GARY LYNN MCGEE, hereafter styled the Defendant, on or about APRIL 27, 1993, did then and there unlawfully intentionally and knowingly discharge and permit the discharge of INDUSTRIAL WASTE **into and adjacent to water in the State,** namely a SANITARY SEWER LINE, which caused and threatened to cause water pollution, said discharge not being in strict compliance with all required permits or with a valid and currently effective order issued or rule adopted by the appropriate regulatory agency.

In cause no. 9339468, the information alleged an offense under section Tex.Water Code Ann. § 26.2121(d) (Vernon Supp.1995), as follows:

GARY LYNN MCGEE, hereafter styled the Defendant, heretofore on or about APRIL 27, 1993, did then and there unlawfully intentionally and knowingly discharge and permit the discharge of a waste and pollutant, namely INDUSTRIAL WASTE, from a point source namely a DISCHARGE HOSE, in violation of Texas Water Code, Section 26.121(a)(1), prohibiting the unauthorized discharge of industrial waste **into or adjacent to any water in the State,** said discharge not being authorized by a rule, permit, or order issued by the Texas Water Commission.

Appellant contends that a sanitary sewer is not "water in the state" because it is not included in the following definition:

As used *in this chapter:*

"Water" or "water in the state" means groundwater, percolating or otherwise,

lakes, bays, ponds, impounding reservoirs, springs, rivers, streams, creeks, estuaries, wetlands, marshes, inlets, canals, the Gulf of Mexico, inside the territorial limits of the state, and all other bodies of surface water, natural or artificial, inland or coastal, fresh or salt, navigable or nonnavigable, and including beds and banks of all watercourse and bodies of surface water, that are wholly or partially inside or bordering the state or inside the jurisdiction of the state.

TEX.WATER CODE ANN. § 26.001(5) (Vernon Supp.1995) (emphasis added). Appellant points out that "sewer system" is separately defined in section 26.001(14) [1], and that definition differs from the definition of "water in the state" under § 26.001(5).

The State contends that the definition in § 26.001(5) of "water in the state" is irrelevant because it does not apply to criminal prosecutions. We agree. The controlling definition is found in § 26.211, which provides:

> As used *in this subchapter:* (1) "Water" includes both surface and sub-surface water, and "Water in the state" means any water within the jurisdiction of the state.

TEX.WATER CODE ANN. § 26.211(1) (Vernon 1988) (emphasis added).

Under the Code Construction Act, section 26.211(1) controls because it is a special provision applying only to subchapter F of chapter 26 of the water code, which is entitled "criminal prosecution." TEX.GOV'T CODE ANN. § 311.026 (Vernon 1988) (In case of conflict, special statute prevails as an exception to the general provision.). Both of these informations allege criminal offenses under § 26.2121, which is part of subchapter F. Section 26.001, relied on by appellant, is within subchapter A of chapter 26, which is entitled "administrative provisions." It generally covers all of chapter 26, but it is subject to exceptions like that created in § 26.211. We conclude that the legislature intended the definition in section 26.211 to apply in criminal prosecutions, such as this case. In *American Plant Food Corp. v.*

*State,* 587 S.W.2d 679, 682–83 (Tex.Crim.App. 1979), the court, in analyzing the sufficiency of the evidence, quoted both definitions and concluded that industrial waste placed into a drainage ditch fell within these two "broad definitions." (emphasis added). The defendant specifically complained, however, of the jury instruction defining "water in the state" solely in the language of § 26.211. *Id.* at 683. The court held that a jury instruction tracking only § 26.211(1) was sufficient. *Id.* We interpret this to mean that in criminal prosecutions, the sole correct definition of "water in the state" is that in § 26.211.

Appellant argues that it makes no sense to construe a sanitary sewer as "water in the state" because his discharge was going to be treated at a municipal treatment plant before it entered the general water supply and the discharge from such treatment plants is already regulated by municipal and federal authorities. We do not agree. The fact that other governments may regulate the discharge of waters leaving a treatment plant does not mean that the state cannot regulate pollution of waters entering such a plant.

Courts in other states have held that discharges into sewers may be regulated under statutes defining "waters" similarly to § 26.211(1):

> There is a realistic and practical nexus between controlling what flows into a sewer treatment plant and what flows out of that plant and pollutes the waters of the state.... Controlling what goes into a sewer system is a practical method of controlling the final effluent. The efficiency, sufficiency, adequacy and capacity of a specified sewer treatment plant are obviously controlled and patently affected by what goes in to such plants. In such manner only, it would seem, can the legislative declaration ... assure that no contaminants are discharged into the waters without being given the degree of treatment or control necessary to prevent pollution.

*A.E. Staley Mfg. Co. v. EPA,* 8 Ill.App.3d 1018, 290 N.E.2d 892, 894–95 (1972). *Accord*

---

1. "As used in this chapter: ... (14) "Sewer system" means pipelines, conduits, storm sewers, canals, pumping stations, force mains, and all other constructions, devices, and appurtenant appliances used to transport waste." TEX.WATER CODE ANN. § 26.001(14) (VERNON 1988).

*Armstrong Chemcon, Inc. v. The Pollution Control Board,* 18 Ill.App.3d 753, 310 N.E.2d 648, 651 (1974) (holding that sewers were within the statutory definition of "waters" as being "all accumulations of water, surface and underground, natural and artificial, public and private, or parts thereof, which are wholly or particularly within, flow through, or border upon the state.") The public policy of our state is similar. *See* TEX.WATER CODE ANN. § 26.003 (Vernon 1988).

We hold that appellant's discharge into a sanitary sewer line was a discharge into "water in the state" under § 26.211, and we overrule points of error one and two.

■ In point of error three, appellant contends that §§ 26.2121(a), 26.2121(d), and 26.121(a)(1) are unconstitutionally vague as applied to him.

Appellant contends that he "was not able to know in advance from the written statute" that his act was criminal. He lists three reasons for this uncertainty: (1) Section 26.003 of the water code makes it a state policy to encourage the use of waste collection systems, and he was discharging into a sewer line leading to a waste collection system, (2) the Texas Natural Resources Conservation Commission (TNRCC) has never interpreted the Texas Water Code to require a permit to introduce waste into a municipal sewer system, and (3) making his conduct a crime would result in "the impracticable imposition of state discharge permit requirements on thousands of additional industries, commercial establishments and even homeowners since all such discharges must be expressly authorized by the TNRCC in order to avoid the basic prohibition of section 26.121."

No evidence supports these allegations. Appellant contends the statute is unconstitutionally vague as applied to him, not that it is unconstitutional on its face. However, appellant pleaded no contest and presented no evidence other than the quoted stipulations. There was no evidence that he was confused about the meaning of any statute or unable to comply with it. By pleading no contest, he admitted the allegations in the information that he discharged industrial waste without a required permit. His plea establishes

all facts alleged in the information, specifically, that a permit from some authority was required; that he did not have one; and that knowing this, he nevertheless discharged industrial waste into a sewer line. *Brown v. State,* 507 S.W.2d 235, 238 (Tex.Crim.App. 1974); *see Price v. State,* 866 S.W.2d 606, 611 (Tex.Crim.App.1993); TEX.CODE CRIM.P.ANN. art. 27.14 (Vernon 1989). We hold that the statute is not unconstitutionally vague as applied to appellant.

Point of error three is overruled.

■ In his fourth point of error, appellant contends the judge erred in denying his motion to dismiss one of the cases because the complaints were "multiplicitous." From appellant's argument and reliance on *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), we interpret his argument to be that the double jeopardy clause of the United States Constitution was violated by his two convictions under separate statutes for one criminal act.

Under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the test to determine whether appellant has been punished twice for the "same offense" is as follows:

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. Here, the statute appellant was charged with violating in cause no. 93–17717 requires a discharge (1) into or adjacent to water in the state, (2) that causes or threatens to cause water pollution, (3) unless there is compliance with a permit, order or rule. § 26.2121(a). The statute allegedly violated in cause no. 93–39468 requires (1) a discharge from a point source, (2) in violation of chapter 26, a rule, permit, or order. § 26.2121(d). Each statute requires proof that the other does not. That distinguishes this case from *Ball,* 470 U.S. at 862, 105 S.Ct. at 1672 ("[P]roof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that

weapon."). Appellant's argument may have had merit under *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), but *Corbin* was overruled in *United States v. Dixon,* 509 U.S. 688, 702–05, 113 S.Ct. 2849, 2859–60, 125 L.Ed.2d 556 (1993). Therefore, the judge did not err by denying appellant's motion.

Point of error four is overruled.

The judgments are affirmed.