**GRIFFIN INDUSTRIES,**
**Inc., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–03–382–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

July 14, 2005.

Wendell Odom, Houston, for appellant.

William J. Delmore, III, Chief Prosecutor, Appellate Division, Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Roger A. Haseman, Asst. Dist. Atty., Houston, for appellee.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## MEMORANDUM OPINION

Opinion by Justice GARZA.

Appellant, Griffin Industries, Inc.,[1] was convicted by a jury of the offense of unauthorized discharge. *See* TEX. WATER CODE ANN. 7.147 (Vernon 2000).[2] The trial court assessed appellants punishment at a fine of $10,000. We affirm.

## I. BACKGROUND

On August 3, 2000, Stephen Dicker, a Houston police officer assigned to the Environmental Investigations Unit, responded to a call regarding a spill of chicken waste at 1200 Rutland Street. At the scene, Dicker observed chicken waste, along with some oils and fats, that were in the street and in an adjacent storm drain. He also observed a "makeshift" cleanup being conducted by employees of Lone Star Poultry, a chicken processing plant located on Rutland Street. The cleanup consisted of scooping up solid chicken waste, putting it into barrels, and washing the remaining waste down the storm drain.[3] He also noticed appellant's driver, along with other employees of appellant, washing out the cab of a truck owned by appellant. Dicker testified that he approached the owner of Lone Star, ceased the cleanup, instructed the workers to start a proper clean-up, and photographed the storm drain. After an investigation, Dicker concluded that appellant's truck was filled with chicken waste beyond capacity. He determined that when the truck pulled forward to drive onto the street and then stopped suddenly to avoid an oncoming vehicle, the load of chicken waste shifted forward, came over the top of the truck, and ended up in the street. In his opinion, the overloading of the "opened bed" truck is what caused the release.

Melvin Rogers, the driver of appellant's truck, testified it was his job to pick up animal parts for appellant to recycle. Rogers also testified that after Lone Star loaded his truck, he drove the truck off Lone Star's premises but had to stop abruptly to avoid an oncoming car. The sudden stop caused the chicken waste in the bed of the truck to slosh out over the bed and cab of the truck and into the street. Rogers testified that he immediately notified Lone Star and his supervisor about the spill. Appellant hired CES Environmental Service to conduct a clean up of the 1200 block of Rutland and the loading dock at the facility.

On appeal, appellant contends that (1) section 7.147 of the Texas Water Code is unconstitutionally void for vagueness, (2)

---

1. A person under Texas criminal law includes a corporation. *See* TEX. PEN.CODE ANN. 1.07(a)(38) (Vernon Supp.2004–05).

2. The statute reads, in relevant part:
   A person commits an offense if the person discharges or allows the discharge of any waste or pollutant into any water in the state that causes or threatens to cause water pollution unless the waste or pollutant is discharged in strict compliance with all required permits or with a valid and currently effective order issued or rule adopted by the appropriate regulatory agency.
   TEX. WATER CODE ANN. 7.147(a).

3. The State called a number of witnesses who testified that the storm drain used by Lone Star to dispose of the chicken waste tied directly into the waterways of the State of Texas.

section 7.147 of the Texas Water Code is unconstitutional as applied to appellant, (3) there was insufficient evidence to support appellant's conviction for unauthorized discharge, and (4) the trial court committed reversible error in refusing appellant's request for a jury instruction on causation.

## II. Constitutionality of Section 7.147 of Texas Water Code

■ Appellant argues that section 7.147 of the Texas Water Code is void for vagueness, both on its face and as applied to appellant, because it fails to provide notice of what conduct is prohibited and leaves the determination of what constitutes an offense to the discretion of law enforcement agencies of the State. *See* Tex. Water Code Ann. § 7.147. When considering the constitutionality of a statute, we commence with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting the statute. *Ex Parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978) (en banc); *Brenneman v. State,* 45 S.W.3d 729, 732 (Tex.App.-Corpus Christi 2001, no pet.). The burden is on the appellant to prove that the statute is unconstitutional. *Granviel,* 561 S.W.2d at 511; *Brenneman,* 45 S.W.3d at 732. Appellate courts must uphold the statute if it can be reasonably construed to be constitutional. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App. 1979) (en banc); *Brenneman,* 45 S.W.3d at 732. A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by statute or if it encourages arbitrary and erratic arrests and convictions. *Brenneman,* 45 S.W.3d

at 732 (citations omitted). Stated another way, a statute is unconstitutionally vague "if persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* The initial inquiry must be whether the ordinary, law-abiding individual would have received sufficient information that his or her conduct risked violating a criminal law. *Bynum v. State,* 767 S.W.2d 769, 773 (Tex.Crim.App. 1989) (en banc). If a statute can be construed in two different ways, one of which sustains its validity, we must apply the interpretation that sustains its validity. *Mody v. State,* 2 S.W.3d 652, 653–54 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd). A statute is not vague or indefinite merely because its words or phrases are not specifically defined. *State v. Edmond,* 933 S.W.2d 120, 126 (Tex.Crim.App.1996) (en banc). If a statute is challenged for vagueness and no First Amendment rights are involved, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. *Bynum,* 767 S.W.2d at 774.

In this case, appellant contends that "to discharge," as defined under Texas Water Code section 26.001, fails to give a person of reasonable intelligence fair notice of what is prohibited and allows unfettered discretion in the application of the statute by law enforcement. *See* TEX. WATER CODE ANN. § 26.001(19) (Vernon Supp. 2004–05). Appellant argues that, when read literally, the statute encompasses an enormous range of conduct.[4]

■ A facial challenge to a statute on the basis of vagueness will be upheld only

---

4. Relative to its vagueness challenge, appellant offers several scenarios which, it asserts, render this statute vague. It asks: Is it an offense to permit another to commit water pollution? Does one have to have knowledge of the water pollution of another? Is it an offense to allow water pollution by another? What must you do to prevent another from engaging in the act of water pollution? Is an attempt to prevent the acts of another what is required? Or is a reporting of the incident sufficient?

if the statute is impermissibly vague in all its applications. *State v. Wofford,* 34 S.W.3d 671, 678 (Tex.App.-Austin 2000, no pet.) (citing *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App.1987) (en banc)). A facial challenge is the most difficult because the challenger must establish that no set of circumstances exists under which the statute would be valid. *Id.* (citing *Briggs v. State,* 789 S.W.2d 918, 923 (Tex. Crim.App.1990)). When challenging the constitutionality of a statute, a defendant must first make a showing that the statute is unconstitutional as applied to him, that it may be unconstitutional as to others is insufficient. *Brenneman,* 45 S.W.3d at 732 (citations omitted). When analyzing a statute for vagueness, hypothetical situations are not utilized; instead, we must examine the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. *See Bynum,* 767 S.W.2d at 774. Accordingly, our query becomes whether section 7.147 is unconstitutionally vague as applied to appellant in this specific set of circumstances.

■ All criminal laws must give fair notice to the populace as to what activity is made criminal so that individuals have fair warning of what is forbidden. *Id.* Whether a law gives fair notice entails a two-step inquiry. *State v. Fry,* 867 S.W.2d 398, 401 (Tex.App.-Houston [14th Dist.] 1993, no pet.). First, we must determine whether appellant, as an ordinary person, received sufficient information from the statute to understand exactly what conduct is prohibited so that he could act in a lawful manner. *Id.* A statute need not be mathematically precise; it only must give fair warning, in light of common understanding and practices. *Id.* Second,

we determine whether section 7.147 provides sufficient notice of the prohibited conduct to law enforcement personnel, so that appellant is not arbitrarily or discriminatorily prosecuted by the State or convicted by the jury. *See Id.* If either of these inquiries is not met, a statute can be found unconstitutionally vague. *See id.* (citing *Adley v. State,* 718 S.W.2d 682, 685 (Tex.Crim.App.1985)).

■ Appellant's vagueness challenge centers on the definition of "to discharge" as provided by chapter 26 of the water code. TEX. WATER CODE ANN. § 26.001(19).[5] Appellant contends that the statute and its definition failed to provide notice as to what conduct was prohibited and what duties were imposed by the law. Section 7.147 does not reference the definition found in chapter 26 nor does it define the term "discharge." *See* TEX. WATER CODE ANN. § 7.147. Nevertheless, a statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Ahearn v. State,* 588 S.W.2d 327, 338 (Tex.Crim.App. 1979). Instead, the words or phrases must be given their plain meaning and read in the context in which they are used. *Bynum,* 767 S.W.2d at 774. Usually, the word or phrase must then be construed according to the rules of grammar and common usage. *Id.; see also* Tex. Gov'T CODE ANN. § 311.011(a) (Vernon 1998).

We address appellant's vagueness challenge to the word "discharge" in light of its conduct. *Bynum,* 767 S.W.2d at 773. Appellant argues the statute is unconstitutionally vague because the word "discharge" does not provide an objective standard by which to measure its conduct and does not provide adequate notice to appel-

---

**5.** The jury charge included the definition of to discharge as provided by chapter 26 of the water code.

lant or law enforcement personnel of what conduct is prohibited. We disagree. Chapter 26 of the Texas Water Code defines "to discharge" as "to deposit, conduct, drain, emit, throw, run, allow to seep, or otherwise release or dispose of, or to allow, permit, or suffer any of these acts or omissions." *See* Tex. Water Code Ann. § 26.001(19). "Discharge" is also a commonly used word with the plain meaning of "to relieve of a charge, load, or burden." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed.1996). The two definitions are actually very similar.

We conclude that the term "discharge" as defined in chapter 26 and its plain meaning, adequately conveys to the public the legislature's intent to criminalize the release of waste or pollutants into or near water in the state. Accordingly, as applied to appellant, and in light of appellant's conduct, the term "discharge" is not vague. The record reveals that (1) appellant's driver was in possession and control of the chicken waste at the time of the incident, (2) the abrupt stop caused the chicken waste to spill, (3) appellant's driver failed to contain the spill or attempt to stop the discharge of the waste into the storm drain, and (4) appellant's driver along with other employees of appellant washed chicken waste off the cab of appellant's truck onto the sidewalk and allowed the parts to wash towards the storm drain. We have no basis to conclude that appellant did not receive sufficient information from the statute to understand what conduct is prohibited so that it could act in a lawful manner. *See McGee v. State,* 923 S.W.2d 627, 631 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd).

Appellant also contends that the statute, as applied in this case, is unconstitutionally void for vagueness because it delegates discretion to law enforcement. Appellant argues that depending on the mood, policy, and discretion of law enforcement, appellant could be charged with water pollution even if it informed others engaged in a cleanup, such as employees of the fire department, that they were committing an illegal discharge. These are hypothetical situations, however, and not the case that is actually before us. Appellant failed to present any evidence that law enforcement officers arbitrarily applied the statute at issue in this case. *See Fry,* 867 S.W.2d at 403. Our review is limited to whether the statute was arbitrary as applied to appellant in this case. *See Bynum,* 767 S.W.2d at 774. Appellant has not met its burden of establishing that the statute in this case is unconstitutional as applied to it. Accordingly, we overrule appellant's first and second issues.

## III. Legal Sufficiency

By its third issue, appellant contends that there was insufficient evidence of unauthorized discharge. *See* Tex. Water Code Ann. § 7.147. Appellant argues that there is no evidence that the original spill threatened to cause pollution (but for the intervention of the Lone Star employees) and no evidence that its truck driver aided or abetted the Lone Star employees in their act of washing the chicken waste down the storm drain. Appellant further argues that, standing alone, proof that an individual was present at the scene of a crime is insufficient to hold the accused criminally responsible for the conduct of another.

A challenge to legal sufficiency in criminal cases requires the appellate court to review the relevant evidence in the light most favorable to the verdict to determine whether a rational jury could have found all the essential elements of the crime beyond a reasonable doubt. *Clewis v. State,* 922 S.W.2d 126, 132–33 (Tex.Crim. App.1996); *see Jackson v. Virginia,* 443

U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court should consider all the evidence in favor of the verdict, whether properly or improperly introduced by the prosecution or the defense. *Clewis,* 922 S.W.2d at 132–33.

In a jury trial, legal sufficiency is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* It is up to the court to determine whether the jury was presented with evidence that established all of the elements of the crime beyond a reasonable doubt. *Sanders v. State,* 119 S.W.3d 818, 820 (Tex.Crim.App. 2003). A person commits the offense of unauthorized discharge if:

> (1) The person discharges or allows the discharge of any waste or pollutant into any water in the state, (2) that causes or threatens to cause water pollution, unless (3) the waste or pollutant is discarded in strict compliance with all required permits or with a valid and currently effective order issued or rule adopted by the appropriate regulatory agency.

See TEX. WATER CODE ANN. § 7.147(a). An offense may be prosecuted without alleging or proving any culpable mental state. TEX. WATER CODE ANN. § 7.147(b). The evidence shows that chicken waste was discharged from appellant's truck, while in the possession of appellant's employee, and that the chicken waste was spread all over Rutland Street.

The evidence also shows that the driver of appellant's truck, along with other employees of appellant and Lone Star, washed the chicken waste off the cab of appellant's truck onto the sidewalk and allowed the waste to flow into the storm drain.[6] We conclude that the acts of appellant's driver and its other employees, standing alone, are sufficient to establish the first element of unauthorized discharge. We do not base this conclusion solely on the presence of appellant's driver at the scene of the crime; our conclusion rests on evidence that appellant's driver, accompanied by other employees of appellant, in washing appellant's truck, discharged chicken waste onto the sidewalk and allowed it to be washed into the storm drain. In reaching this conclusion, we note that the statute not only prohibits the act of discharging, it also criminalizes acts or omissions allowing discharge of waste into any water in the state.

Appellant also challenges the evidence as to the second element of the statute. Appellant argues that there can be no assumption that the initial spill was a per se threat to the water of the State of Texas. Appellant contends that there is no evidence of waste or pollution near a water source and that the evidence is undisputed that someone was going to, and did, clean up the discharge before it threatened or entered the sewer. We disagree. The State produced multiple photographs that show the chicken waste on the street being swept into the storm drain. Further, Dorene Hancock, an environmental investigator for the City of Houston, testified that she observed the waste being discharged into the sewer and that she collected two samples. The lab

---

**6.** As evidence, the State introduced testimony and pictures taken by Officer Dicker that show appellants employees (including the driver) and Lone Stars employees washing chicken waste off the cab of the truck and brushing and hosing the chicken waste onto the street and into the storm drain.

records revealed oil and grease levels at 4,890 mg/l, and fecal coliform levels at 200,000,000 colonies per 100 ml. Terry Mills of Envirodyne Laboratories in Houston testified that these oil and grease levels are sufficient to cause water pollution. He also added that oil and grease derived from chicken waste create a "serious potential for disease." This evidence is sufficient to support the jury's finding that the discharge caused or threatened to cause water pollution. For the foregoing reasons, we hold that the evidence is legally sufficient to support appellant's conviction. We overrule appellant's third issue.

## IV.  Jury Instruction

■ In its final issue, appellant contends that the trial court committed reversible error in refusing appellant's request for a jury instruction on causation. The instruction read:

> Causation:
>
> (A) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. P.Code. Sec 6.04
>
> Therefore if the jury finds from the evidence or has reasonable doubt thereof, that Lone Star Poultry discharged or allowed the discharge of a waste pollutant into or adjacent to water in the State OR Lone Star Poultry discharged or allowed the discharge of a waste or pollutant from a point source AND that the conduct of Defendant, Griffin Industries, Inc. either alone or concurrently was not sufficient to produce or allow the result, then the jury must acquit the defendant.

Appellant's defense was based on its argument that, but for the actions of Lone Star in overloading the truck and sweeping the chicken waste into the storm drain, there would not have been any threat of pollution or actual pollution into the Texas water system. The trial court gave no instruction on causation.

> Section 6.04  of the Texas Penal Code provides:
>
> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

TEX. PEN. CODE ANN. § 6.04(a) (Vernon 2003). Under section 6.04, a person is criminally liable if his conduct, regardless of a concurrent cause, caused the harm or if his conduct, together with another cause resulted in the harm. *Robbins v. State,* 717 S.W.2d 348, 351 (Tex.Crim.App.1986). Only when the person's conduct, by itself, is clearly insufficient to cause the harm is a conviction improper. *Id.* Cases interpreting this penal code section hold that a charge on causation is not required when the defendant's conduct was sufficient to produce the result. *See Daniel v. State,* 577 S.W.2d 231, 235–36 (Tex.Crim.App. 1979); *Contreras v. State,* 838 S.W.2d 594, 606 (Tex.App.-Corpus Christi 1992, pet. ref'd). Stated conversely, a concurrent charge is not required when the evidence does not show that the appellant's conduct was clearly insufficient to cause the result. We find no such evidence in this case. Appellant relies on its argument that the spill was caused because Lone Star overfilled its truck with chicken waste and because Lone Star washed the chicken waste into the storm drain. However, this argument ignores the direct actions of appellant's employees, who personally washed chicken waste into the storm drain. We overrule appellant's fourth issue.

We affirm the judgment of the trial court.