NUMBER 13-03-382-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS CHRISTI - EDINBURG  

 

GRIFFIN INDUSTRIES, INC.,                                                 Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                 Appellee.

 

On appeal from the County Court at
Law No. 5 

of Harris
County, Texas.

 

MEMORANDUM OPINION

 

                          Before
Justices Yañez, Castillo, and Garza

                            Memorandum
Opinion by Justice Garza

 








Appellant, Griffin Industries, Inc.,[1]
was convicted by a jury of the offense of unauthorized discharge.  See Tex.
Water Code Ann. ' 7.147 (Vernon 2000).[2]  The trial court assessed appellant=s punishment at a fine of $10,000.  We affirm.

I. Background








On August 3, 2000, Stephen Dicker, a Houston police officer
assigned to the Environmental Investigations Unit, responded to a call
regarding a spill of chicken waste at 1200
 Rutland Street
. 
At the scene, Dicker observed chicken waste, along with some oils and
fats, that were in the street and in an adjacent storm drain.  He also observed a Amakeshift@ cleanup being conducted by employees of Lone Star
Poultry, a chicken processing plant located on Rutland Street
.  The cleanup consisted of scooping up solid
chicken waste, putting it into barrels, and washing the remaining waste down
the storm drain.[3]   He also noticed appellant=s driver, along with other employees of appellant,
washing out the cab of a truck owned by appellant.  Dicker testified that he approached the owner
of Lone Star, ceased the cleanup, instructed the workers to start a proper
clean-up, and photographed the storm drain. 
After an investigation, Dicker concluded that appellant=s truck was filled with chicken waste beyond
capacity.  He determined that when the
truck pulled forward to drive onto the street and then stopped suddenly to
avoid an oncoming vehicle, the load of chicken waste shifted forward, came over
the top of the truck, and ended up in the street.  In his opinion, the overloading of the Aopened bed@ truck is what caused the release.   

Melvin Rogers, the driver of appellant=s truck, testified it was his job to pick up animal
parts for appellant to recycle.  Rogers also testified
that after Lone Star loaded his truck, he drove the truck off Lone Star=s premises but had to stop abruptly to avoid an
oncoming car.  The sudden stop caused the
chicken waste in the bed of the truck to slosh out over the bed and cab of the
truck and into the street.  Rogers testified that he
immediately notified Lone Star and his supervisor about the spill.  Appellant 
hired CES Environmental Service to conduct a clean up of the 1200 block
of Rutland and
the loading dock at the facility.  

On appeal, appellant contends that (1) section 7.147
of the Texas Water Code is unconstitutionally void for vagueness, (2) section
7.147 of the Texas Water Code is unconstitutional as applied to appellant, (3)
there was insufficient evidence to support appellant=s conviction for unauthorized discharge, and (4) the
trial court committed reversible error in refusing appellant=s request for a jury instruction on causation.  

II. 
Constitutionality of Section 7.147 of Texas Water Code  








Appellant argues that section 7.147 of the Texas
Water Code is void for vagueness, both on its face and as applied to appellant,
because it fails to provide notice of what conduct is prohibited and leaves the
determination of what constitutes an offense to the discretion of law
enforcement agencies of the State.  See
Tex. Water Code Ann. ' 7.147.          When
considering the constitutionality of a statute, we commence with the
presumption that the statute is valid and that the legislature has not acted
unreasonably or arbitrarily in enacting the statute.  Ex Parte Granviel, 561 S.W.2d 503, 511
(Tex. Crim. App. 1978) (en banc); Brenneman v. State, 45 S.W.3d 729, 732
(Tex. App.BCorpus Christi 2001, no pet.).  The burden is on the appellant to prove that
the statute is unconstitutional.  Granviel,
561 S.W.2d at 511; Brenneman, 45 S.W.3d at 732.  Appellate courts must uphold the statute if
it can be reasonably construed to be constitutional.  Ely v. State, 582 S.W.2d 416, 419
(Tex. Crim. App. 1979) (en banc); Brenneman, 45 S.W.3d at 732.  A statute is void for vagueness if it fails
to give a person of ordinary intelligence fair notice that his or her
contemplated conduct is forbidden by statute or if it encourages arbitrary and
erratic arrests and convictions.  Brenneman,
45 S.W.3d at 732 (citations omitted). 
Stated another way, a statute is unconstitutionally vague Aif persons of common intelligence must necessarily
guess at its meaning and differ as to its application.@  Id.  The initial inquiry must be whether the
ordinary, law-abiding individual would have received sufficient information
that his or her conduct risked violating a criminal law.  Bynum v. State, 767 S.W.2d 769, 773 (Tex.
Crim. App. 1989) (en banc).  If a statute
can be construed in two different ways, one of which sustains its validity, we
must apply the interpretation that sustains its validity.  Mody v. State, 2 S.W.3d 652, 653-54
(Tex. App.BHouston [14th Dist.] 1999, pet. ref=d).  A statute
is not vague or indefinite merely because its words or phrases are not
specifically defined.  State v. Edmond,
933 S.W.2d 120, 126 (Tex. Crim. App. 1996) (en banc).  If a statute is challenged for vagueness and
no First Amendment rights are involved, the reviewing court need only
scrutinize the statute to determine whether it is impermissibly vague as
applied to the challenging party=s specific conduct. 
Bynum, 767 S.W.2d at 774. 








In this case, appellant contends that Ato discharge,@ as defined under Texas Water Code section 26.001,
fails to give a person of reasonable intelligence fair notice of what is
prohibited and allows unfettered discretion in the application of the statute
by law enforcement.  See Tex. Water Code Ann. ' 26.001(19) (Vernon
Supp. 2004-05).  Appellant argues that,
when read literally, the statute encompasses an enormous range of conduct.[4]  

A facial challenge to a statute on the basis of
vagueness will be upheld only if the statute is impermissibly vague in all its
applications.  State v. Wofford,
34 S.W.3d 671, 678 (Tex.
App.BAustin 2000, no pet.) (citing Briggs v. State,
740 S.W.2d 803, 806 (Tex. Crim. App. 1987) (en banc)).  A facial challenge is the most difficult
because the challenger must establish that no set of circumstances exists under
which the statute would be valid.  Id. (citing
Briggs v. State, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990)).  When challenging the constitutionality of a
statute, a defendant must first make a showing that the statute is
unconstitutional as applied to him, that it may be unconstitutional as to
others is insufficient.  Brenneman,
45 S.W.3d at 732 (citations omitted). 
When analyzing a statue for vagueness, hypothetical situations are not
utilized; instead, we must examine the statute to determine whether it is
impermissibly vague as applied to the challenging party=s specific conduct.  See Bynum, 767 S.W.2d at 774.  Accordingly, our query
becomes whether section 7.147 is unconstitutionally vague as applied to
appellant in this specific set of circumstances. 













All criminal
laws must give fair notice to the populace as to what activity is made criminal
so that individuals have fair warning of what is forbidden.  Id.
 Whether a law gives fair notice
entails a two-step inquiry.  State v.
Fry, 867 S.W.2d 398, 401 (Tex. App.BHouston [14th
Dist.] 1993, no pet.).  First, we must
determine whether appellant, as an ordinary person, received sufficient
information from the statute to understand exactly what conduct is prohibited
so that he could act in a lawful manner. 
Id.  A statute need not be mathematically
precise; it only must give fair warning, in light of common understanding and
practices.  Id. 
Second, we determine whether section 7.147 provides sufficient notice of
the prohibited conduct to law enforcement personnel, so that appellant is not
arbitrarily or discriminatorily prosecuted by the State or convicted by the
jury.  See id.  If either of these inquiries is not met, a
statute can be found unconstitutionally vague.  See id. (citing Adley v. State, 718
S.W.2d 682, 685 (Tex. Crim. App. 1985)). Appellant=s vagueness
challenge centers on the definition of Ato discharge@ as provided by
chapter 26 of the water code.  Tex. Water Code Ann. ' 26.001(19).[5] 
Appellant contends that the statute and its definition failed to provide
notice as to what conduct was prohibited and what duties were imposed by the
law.  Section 7.147 does not reference
the definition found in chapter 26 nor does it define the term Adischarge.@  See Tex. Water Code Ann. ' 7.147. 
Nevertheless, a statute is not unconstitutionally vague merely because
the words or terms used are not specifically defined.  Ahearn v. State, 588 S.W.2d 327, 338
(Tex. Crim. App. 1979).  Instead, the
words or phrases must be given their plain meaning and read in the context in
which they are used.  Bynum, 767
S.W.2d at 774.  Usually, the word or
phrase must then be construed according to the rules of grammar and common
usage.  Id.; see also Tex. Gov=t Code Ann. ' 311.011(a) (Vernon 1998).

We address appellant=s vagueness challenge to the word Adischarge@ in light of its conduct.  Bynum,
767 S.W.2d at 773.  Appellant argues the
statute is unconstitutionally vague because the word "discharge" does
not provide an objective standard by which to measure its conduct and does not
provide adequate notice to appellant or law enforcement personnel of what
conduct is prohibited.  We disagree.  Chapter 26 of the Texas Water Code defines Ato discharge@ as Ato deposit, conduct, drain, emit, throw, run, allow to seep, or
otherwise release or dispose of, or to allow, permit, or suffer any of these
acts or omissions.@ See
Tex. Water Code Ann. ' 26.001(19).  ADischarge@ is also a commonly used word with the plain meaning of Ato relieve of a charge, load, or burden.@  See
Merriam-Webster=s Collegiate
Dictionary (10th ed.
1996).  The two definitions are actually
very similar.








We conclude that the term Adischarge@ as defined in chapter 26 and 
its plain meaning, adequately conveys to the public the legislature=s intent to criminalize the release of
waste or pollutants into or near water in the state.  Accordingly, as applied to appellant, and in
light of appellant=s conduct, the term Adischarge@ is not vague.  The record
reveals that (1) appellant=s driver was in possession and control
of the chicken waste at the time of the incident, (2) the abrupt stop caused
the chicken waste to spill, (3) appellant=s driver failed to contain the spill or
attempt to stop the discharge of the waste into the storm drain, and (4)
appellant=s driver along with other employees of
appellant washed chicken waste off the cab of appellant=s truck onto the sidewalk and allowed
the parts to wash towards the storm drain. 
We have no basis to conclude that appellant did not receive sufficient
information from the statute to understand what conduct is prohibited so that
it could act in a lawful manner.  See
McGee v. State, 923 S.W.2d 627, 631 (Tex. App.BHouston [1st Dist.] 1995, pet. ref=d). 

Appellant also contends that the
statute, as applied in this case, is unconstitutionally void for vagueness
because it delegates discretion to law enforcement.  Appellant argues that depending on the mood,
policy, and discretion of law enforcement, appellant could be charged with
water pollution even if it informed others engaged in a cleanup, such as
employees of the fire department, that they were committing an illegal
discharge.  These are hypothetical
situations, however, and not the case that is actually before us.  Appellant failed to present any evidence that
law enforcement officers arbitrarily applied the statute at issue in this
case.  See Fry, 867 S.W.2d at
403.  Our review is limited to whether
the statute was arbitrary as applied to appellant in this case.  See Bynum, 767 S.W.2d at 774.  Appellant has not met its burden of
establishing that the statute in this case is unconstitutional as applied to
it.  Accordingly, we overrule appellant=s first and second issues. 

III. 
Legal Sufficiency








By its third issue, appellant contends
that there was insufficient evidence of unauthorized discharge.  See
Tex. Water Code Ann. ' 7.147. 
Appellant argues that there is no evidence that the original spill threatened
to cause pollution (but for the intervention of the Lone Star employees) and no
evidence that its truck driver aided or abetted the Lone Star employees in
their act of washing the chicken waste down the storm drain.  Appellant further argues that, standing
alone, proof that an individual was present at the scene of a crime is
insufficient to hold the accused criminally responsible for the conduct of
another. 

A challenge to legal sufficiency in
criminal cases requires the appellate court to review the relevant evidence in
the light most favorable to the verdict to determine whether a rational jury
could have found all the essential elements of the crime beyond a reasonable
doubt.  Clewis v. State, 922
S.W.2d 126, 132-33 (Tex. Crim. App. 1996); see Jackson
v. Virginia, 443 U.S.
307, 318-19 (1979).  The court should
consider all the evidence in favor of the verdict, whether properly or
improperly introduced by the prosecution or the defense.  Clewis, 922 S.W.2d at 132-33.  

In a jury trial, legal sufficiency is
measured against the elements of the offense as defined by a hypothetically
correct jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would be one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
restrict the State=s theories of liability, and adequately
describes the particular offense for which the defendant was tried.  Id.
 It is up to the court to determine
whether the jury was presented with evidence that established all of the
elements of the crime beyond a reasonable doubt.  Sanders v. State, 119 S.W.3d 818, 820
(Tex. Crim.
App. 2003).  A person commits the offense
of unauthorized discharge if:

(1) The person discharges or allows the
discharge of any waste or pollutant into any water in the state, (2) that
causes or threatens to cause water pollution, unless (3) the waste or pollutant
is discarded in strict compliance with all required permits or with a valid and
currently effective order issued or rule adopted by the appropriate regulatory
agency.








 

See Tex. Water Code Ann. ' 7.147(a).  An offense may be prosecuted without alleging
or proving any culpable mental state.  Tex. Water Code Ann. ' 7.147(b).  The evidence shows that chicken waste was
discharged from appellant=s truck, while in the possession of
appellant=s employee, and that the chicken waste
was spread all over Rutland Street
.  The evidence also shows that the driver of
appellant=s truck, along with other employees of
appellant and Lone Star, washed the chicken waste off the cab of appellant=s truck onto the sidewalk and allowed
the waste to flow into the storm drain.[6]  We conclude that the acts of appellant=s driver and its other employees,
standing alone, are sufficient to establish the first element of unauthorized
discharge.  We do not base this
conclusion solely on the presence of appellant=s driver at the scene of the crime; our conclusion rests on
evidence that appellant=s driver, accompanied by other employees
of appellant, in washing appellant=s truck, discharged chicken waste onto
the sidewalk and allowed it to be washed into the storm drain.  In reaching this conclusion, we note that the
statute not only prohibits the act of discharging, it also criminalizes acts or
omissions allowing discharge of waste into any water in the state. 








Appellant also challenges the evidence
as to the second element of the statute. 
Appellant argues that there can be no assumption that the initial spill was
a per se threat to the water of the State of Texas. 
Appellant contends that there is no evidence of waste or pollution near
a water source and that the evidence is undisputed that someone was going to,
and did, clean up the discharge before it threatened or entered the sewer.  We disagree. 
The State produced multiple photographs that show the chicken waste on
the street being swept into the storm drain. 
Further, Dorene Hancock, an environmental investigator for the City of Houston, testified that
she observed the waste being discharged into the sewer and that she collected
two samples.  The lab records revealed
oil and grease levels at 4,890 mg/l, and fecal coliform levels at 200,000,000
colonies per 100 ml.  Terry Mills of
Envirodyne Laboratories in Houston
testified that these oil and grease levels are sufficient to cause water
pollution.  He also added that oil and
grease derived from chicken waste create a Aserious potential for disease.@  This evidence is
sufficient to support the jury=s finding that the discharge caused or
threatened to cause water pollution.         For the foregoing reasons, we hold that
the evidence is legally sufficient to support appellant=s conviction.  We overrule appellant=s third issue.

IV. 
Jury Instruction

In its final issue, appellant contends
that the trial court committed reversible error in refusing appellant=s request for a jury instruction on
causation.  The instruction read: 

Causation: 

(A) A person is criminally responsible
if the result would not have occurred but for his conduct, operating either
alone or concurrently with another cause, unless the concurrent cause was
clearly sufficient to produce the result and the conduct of the actor clearly
insufficient.   P. Code. Sec 6.04








Therefore if the jury finds from the
evidence or has reasonable doubt thereof, that Lone Star Poultry discharged or
allowed the discharge of a waste pollutant into or adjacent to water in the
State OR Lone Star Poultry discharged or allowed the discharge of a waste or
pollutant from a point source AND that the conduct of Defendant, Griffin
Industries, Inc. either alone or concurrently was not sufficient to produce or
allow the result, then the jury must acquit the defendant. 

 

Appellant=s defense was based on its argument that, but for the actions of
Lone Star in overloading the truck and sweeping the chicken waste into the
storm drain, there would not have been any threat of pollution or actual
pollution into the Texas water system. 
The trial court gave no instruction on causation.

Section 6.04 of the Texas Penal Code
provides:

A person is criminally responsible if
the result would not have occurred but for his conduct, operating either alone
or concurrently with another cause, unless the concurrent cause was clearly
sufficient to produce the result and the conduct of the actor clearly
insufficient.

 








Tex. Pen. Code
Ann. ' 6.04(a) (Vernon 2003).  Under section 6.04, a person is criminally
liable if his conduct, regardless of a concurrent cause, caused the harm or if
his conduct, together with another cause resulted in the harm.  Robbins v. State, 717 S.W.2d 348, 351
(Tex. Crim. App. 1986).  Only when the
person=s conduct, by itself, is clearly
insufficient to cause the harm is a conviction improper.  Id.  Cases interpreting this penal code
section hold that a charge on causation is not required when the defendant=s conduct was sufficient to produce the
result.  See Daniel v. State, 577
S.W.2d 231, 235-36 (Tex. Crim. App. 1978); Contreras v. State, 838
S.W.2d 594, 606 (Tex. App.BCorpus Christi 1992, pet. ref=d). 
Stated conversely, a concurrent charge is not required when the evidence
does not show that the appellant=s conduct was clearly insufficient to
cause the result.  We find no such
evidence in this case.  Appellant relies
on its argument that the spill was caused because Lone Star over-filled its
truck with chicken waste and because Lone Star washed the chicken waste into
the storm drain.  However, this argument
ignores the direct actions of appellant=s employees, who personally washed
chicken waste into the storm drain.  We
overrule appellant=s fourth issue. 

We affirm the judgment of the trial
court.

 

 

DORI CONTRERAS GARZA,

Justice

 

Do not publish.                                              

Tex.R.App.P. 47.2(b)

Memorandum Opinion delivered 

and filed this the 14th day of July,
2005.











[1] A Aperson@ under Texas criminal law includes a
corporation.  See Tex. Pen. Code Ann. ' 1.07(a)(38) (Vernon Supp. 2004-05). 





[2] The statute reads, in relevant
part: 

 

A person commits an offense if the
person discharges or allows the discharge of any waste or pollutant into any
water in the state that causes or threatens to cause water pollution unless the
waste or pollutant is discharged in strict compliance with all required permits
or with a valid and currently effective order issued or rule adopted by the
appropriate regulatory agency.

 

Tex.
Water Code Ann. ' 7.147(a).





[3] The State called a number of witnesses
who testified that the storm drain used by Lone Star to dispose of the chicken
waste tied directly into the waterways of the State of Texas.





[4] Relative to its vagueness
challenge, appellant offers several scenarios which, it asserts, render this statute
vague.  It asks: AIs it an offense to permit another
to commit water pollution?@ ADoes one have to have knowledge of
the water pollution of another?@ AIs it an offense to allow water
pollution by another?@ AWhat must you do to prevent another
from engaging in the act of water pollution?@ AIs an attempt to prevent the acts
of another what is required?@ AOr is a reporting of the incident
sufficient?@ 





[5] The jury charge included the
definition of Ato discharge@ as provided by chapter 26 of the
water code.





[6] As evidence, the State introduced
testimony and pictures taken by Officer Dicker that show appellant=s employees (including the driver)
and Lone Star=s employees washing chicken waste
off the cab of the truck and brushing and hosing the chicken waste onto the
street and into the storm drain.