# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00100-CR

**Charlene Springer, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT NO. 52,577, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Charlene Springer appeals her conviction for misapplication of fiduciary property in an amount over $20,000 and under $100,000. *See* Tex. Pen. Code Ann. § 32.45 (West Supp. 2004-05). Appellant complains that the evidence was legally and factually insufficient to support the jury's finding that she misapplied property, which is an essential element of the offense charged. We hold the evidence is sufficient to support the jury's finding and affirm the conviction.

## BACKGROUND

Appellant was the store manager at Cash in a Flash, a check-cashing store in Temple, Texas. James Knight, the owner of Cash in a Flash, testified that there are five rules that all store employees must follow when cashing checks: (1) the person presenting the check must have a valid government-issued picture ID; (2) every check must be verified before it can be cashed, either by

finding a record of successful checks from the issuing company in the store's log or by calling the company to verify that the check was written for the amount and to the person cashing it; (3) all checks for $2,000 or more must have owner approval before cashing; (4) checks may be cashed only by the person to whom the check is made out; and (5) checks for more than $3,000 may be cashed only if a social security card is presented and photocopied.

Knight also requires store employees to photograph the person cashing the check, the check, and a valid government-issued picture ID with a camera installed in the store. Knight maintains records of the photographs taken with every check cashed and copies of social security cards photocopied for checks over $3,000. Knight trained appellant for one month on the store's policies and spent two days a week in the store to make sure the rules were being followed.

On or about August 2, 2001, appellant paid on four fraudulent checks.[1] For ease of analysis, we will refer to the four checks by the last name of the person who cashed them: Smith, Willis, Johnson, and Scott. The record of the Smith check for $3,040 contains a photograph of Ms. Smith and her check and a photocopy of her social security card. No photo ID card was photographed for Ms. Smith. The record of the Willis check for $3,728.23 contains a photograph of Ms. Willis and her non-government-issued ID card and a photocopy of her social security card.[2] The record of the Johnson check for $7,000 contains a photograph of Mr. Johnson and his non-government-issued ID card and a photocopy of his social security card. The record of the Scott check for $8,000 contains a photograph of Mr. Scott and his non-government-issued ID card and a

---

[1] Although the record and briefs discuss an additional set of fraudulent checks cashed by appellant in mid-July 2001, those checks are not at issue on appeal as they were not included in the jury charge.

[2] Ms. Willis's social security card was later discovered to be fraudulent.

photocopy of his social security card. The ID cards photographed with the Scott, Willis, and Johnson checks did not resemble any type of government-issued ID cards, but were identical to each other. The Smith, Willis, and Johnson checks had tracking numbers identical to those of valid checks in the store's file. The word "Illinois" was misspelled as "Illinols" on the Willis check. The issuing company's name was misspelled on the Johnson check. Appellant did not receive permission from Knight before cashing three of the checks, and the record is silent as to the fourth. Cash in a Flash lost $21,786 as a result of the fraudulent checks.

## DISCUSSION

It is undisputed that appellant cashed four fraudulent checks on or about August 2, 2001. Appellant asserts that the evidence is legally and factually insufficient to prove that she intentionally, knowingly, or recklessly acted contrary to her agreement with Knight when she cashed the fraudulent checks.

Appellant was charged and convicted of the offense of misapplication of fiduciary property under section 32.45 of the penal code: "[a] person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary . . . in a manner that involves substantial risk of loss to the owner of the property." Tex. Pen. Code Ann. § 32.45(b). For purposes of this case, a fiduciary is defined as a person acting in a fiduciary capacity or an officer, manager, employee, or agent performing fiduciary functions on behalf of a fiduciary. *Id.* § 32.45(a)(1)(C), (D). A person "misapplies" property when she "deal[s] with the property contrary to . . . an agreement under which the fiduciary holds the property." *Id*. § 32.45(a)(2)(A). For purposes of section 32.45, an "agreement is a harmonious understanding or an arrangement, as between two or more parties,

3

as to a course of action." *Bynum v. State*, 767 S.W.2d 769, 777 (Tex. Crim. App. 1989). The agreement need not be written nor proved by witness testimony. *Id.* As discussed below, the evidence is sufficient to show that appellant and Knight had reached a harmonious understanding as to the procedure to be followed before a check could be cashed.[3] *See id.*

On appeal, appellant argues that the State failed to provide sufficient evidence to prove beyond a reasonable doubt that appellant recklessly dealt with the property contrary to her agreement with Knight. Appellant claims that the fact that she was working in the store at the time and cashed the checks establishes neither guilt nor intentional, knowing, or reckless misapplication of Knight's property. She claims that the State's evidence is circumstantial and therefore legally and factually insufficient to support a conviction. However, "the absence of direct evidence does not mean the State's case is weak. Circumstantial evidence often has equal or even greater probative value than direct evidence." *Goodman v. State*, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001).

In her brief, appellant uses the term "misappropriate" interchangeably with the term "misapply." These terms, however, are not interchangeable. Misappropriation is "[t]he application of another's property or money dishonestly to one's own use," *Black's Law Dictionary* 1013 (7th ed. 1999), whereas misapplication occurs when a person "deal[s] with the property contrary to . . . an agreement under which the fiduciary holds the property." Tex. Pen. Code Ann. § 32.45(a)(2)(A). Appellant confuses the meanings of these terms in her brief. First, appellant contends that the evidence does not establish that she had the requisite *mens rea* to either intentionally or recklessly "*misappropriate*" property from Knight because there was no evidence that appellant knew any of

---

[3] Appellant does not dispute the existence of an agreement with Knight. She does argue, however, that receiving a government-issued picture ID card with every check was not a part of their agreement. This issue is addressed below.

4

the individuals who cashed the checks or received any benefit from cashing the checks. Neither complicity with the perpetrator nor benefit from the property is an element of misapplication of fiduciary property, the crime of which appellant was convicted. *See id.* § 32.45. Benefit from the property is, however, included in the definition of misappropriation. Further, appellant asserts that the State "failed to prove that the appellant was involved in any copying of information off the checks, making the checks herself or in concert with others, or obtained any benefit at all in the cashing of any check." This argument is not directly relevant to any of the elements of misapplication, but would be relevant to a discussion of misappropriation. We will, however, address these arguments as far as they bear upon appellant's *mens rea* with regard to the misapplication of Knight's property.

**Legal Sufficiency**

In reviewing the legal sufficiency of the evidence to support a criminal conviction, the court views "the relevant evidence in the light most favorable to the verdict [to] determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The jury, as trier of fact, is "the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (internal citations omitted). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial evidence. *Barnes v. State*, 62 S.W.3d 288, 297 (Tex. App.—Austin 2001, pet. ref'd).

5

Appellant attacks the legal sufficiency of the evidence to support the jury's finding that she intentionally, knowingly, or recklessly acted contrary to an agreement with Knight by cashing the fraudulent checks. There is evidence that appellant broke the first rule of the agreement, that employees must obtain a valid government-issued picture ID card from every person who wants to cash a check. Appellant did not photograph an ID card with the Smith check, although she argues that the State's evidence does not rule out the possibility that she checked the ID and merely forgot to photograph it. For the Johnson, Willis, and Scott checks, appellant accepted and photographed unofficial, non-government-issued ID cards in violation of the rule. Based on testimony by another Cash in a Flash employee who cashed one check without obtaining government-issued ID, appellant contends that the government-issued ID requirement was not part of the agreement. However, evidence that the rule had not been consistently followed in the past does not negate the existence of an agreement to follow the rule. There is other evidence supporting the inclusion of this rule in her agreement with Knight: Knight and another Cash in a Flash employee testified that government-issued picture ID cards are required from anyone wishing to cash a check; the employee who had broken the rule testified that taking a non-government-issued ID card as identification was a mistake and against the rules; and appellant had previously followed the rule.

The jury also heard evidence that appellant broke the third rule of the agreement, that employees must obtain Knight's permission before cashing checks for more than $2,000. Knight testified that appellant failed to call him before cashing any of the fraudulent checks. After presenting evidence that Knight does not keep a log of such calls, appellant argued that the evidence that she violated this rule was legally insufficient. The jury evaluates credibility and can believe any or all evidence. *See Jones*, 944 S.W.2d at 647. Viewed in the light most favorable to the verdict,

6

a rational trier of fact could have relied on Knight's testimony to find that this requirement was breached. *See Johnson*, 23 S.W.3d at 7.

Appellant also argues that the evidence was legally insufficient to support the jury's finding that she had the requisite *mens rea* to commit the offense; however, viewed in a light most favorable to the verdict, the evidence supports the jury finding that she had the requisite *mens rea*. First, Knight trained appellant on the accepted check-cashing procedures for a month, and she had previously followed each rule with regularity. Second, Knight testified that appellant failed to call him before cashing the fraudulent checks, despite the fact that she had previously sought his permission to cash large checks several times each week. Third, despite the fact that appellant had previously acquired valid identification from customers, the ID cards appellant accepted with the checks were not government-issued and did not resemble any type of government ID. Fourth, three of the fraudulent checks were cashed in quick succession by persons bearing the same kind of unusual non-government-issued IDs. Fifth, all of the photographs accompanying the fraudulent checks were of unusually poor quality that prevented identification of the perpetrators, despite the fact that appellant's previous photographs had been of better quality. Finally, the Smith, Willis, and Johnson checks had tracking numbers identical to valid checks in the store's file. Although this information could have been obtained in other ways, viewed in the light most favorable to the verdict, we find that a rational jury could have believed that the information was copied and distributed to the check cashers by a store employee.

Viewing all the evidence in the light most favorable to the verdict, we find a rational trier of fact could have found that appellant intentionally, knowingly, or recklessly acted contrary

to her agreement when she cashed the four fraudulent checks. The evidence is legally sufficient to support the verdict. We overrule appellant's first issue.

**Factual Sufficiency**

Appellant next attacks the factual sufficiency of the evidence to establish: (1) breach of the agreement, and (2) the requisite *mens rea*. The only question to be answered in a factual-sufficiency review is whether, considering all of the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The jury is not rationally justified in finding guilt "when considered by itself, evidence supporting the verdict [is] too weak to support the finding of guilt beyond a reasonable doubt" or when "the contrary evidence [is] strong enough that the beyond-a-reasonable-doubt standard could not have been met." *Id*. at 484-85. We defer to the trier of fact on issues involving the weight and credibility of evidence. *Id.* at 481; *see Johnson*, 23 S.W.3d at 7. The verdict should be set aside where the jury verdict is "clearly wrong and manifestly unjust." *Zuniga*, 144 S.W.3d at 481 (defining "manifestly unjust" verdict as one that shocks the conscience or clearly demonstrates bias).

As discussed earlier, there is evidence that appellant broke the first rule of the agreement by not photographing an ID card for the Smith check and by accepting unofficial, non-government-issued ID cards for the Johnson, Willis, and Scott checks. There is also evidence that appellant broke the third rule by failing to call Knight before cashing any of the fraudulent checks.

Appellant contends that the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met. Based on evidence that another employee had

once cashed a check without obtaining valid government-issued ID, appellant asserts that the government-issued ID requirement was not part of the agreement. However, as stated above, evidence that the rule had been broken in the past does not negate the existence of an agreement to follow the rule, and there is other evidence supporting this element of the agreement. With regard to the absence of a photographed ID card in the Smith record, appellant argues that the evidence is insufficient to disprove the possibility that she checked Smith's ID card but merely forgot to photograph it. However, the jury, not the reviewing court, accepts or rejects reasonably equal competing theories of causation. *Goodman*, 66 S.W.3d at 287. Appellant disputes Knight's testimony that appellant did not receive permission to cash the checks with evidence that Knight does not keep a log of such calls. However, the fraudulent checks were large and cashed sequentially and the $8,000 Scott check was one of the largest the store had ever cashed. Therefore, it is reasonable to believe that Knight would remember giving appellant permission to cash the checks. Viewed in a neutral light, the supporting evidence rationally justifies a finding that appellant breached her agreement with Knight, and the contrary evidence is not so strong as to require setting aside the jury verdict as clearly wrong and manifestly unjust. *See Zuniga*, 144 S.W.3d at 484-85.

Appellant also contends that the evidence is factually insufficient to support the jury's finding that she had the requisite *mens rea* to commit the offense. However, viewed in a neutral light, the record contains ample evidence to support the jury's verdict. The jury heard evidence that appellant broke Knight's rules to cash the fraudulent checks despite the fact that she had previously followed them. Several of the checks had identical tracking numbers to valid checks in the store's file. Three of the fraudulent checks were cashed by persons bearing the same kind of unusual non-

9

government-issued ID cards, and each of the photographs accompanying the checks were of poorer quality than previous photographs.

The points appellant raises are simply alternative theories of causation or explanations of appellant's intention and actions while cashing the fraudulent checks. However, it is the jury, not the reviewing court, that accepts or rejects reasonably equal competing theories of causation. *See Goodman*, 66 S.W.3d at 287. Appellant does not state why the jury's finding is factually insufficient, nor does she explain how the jury's verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See id.* Further, appellant does not explain why the contrary evidence greatly outweighs the evidence in support of the verdict. *See id.* We hold that the evidence was factually sufficient to support the jury's finding that appellant intentionally, knowingly, or recklessly breached her agreement with Knight. Reviewing the evidence, we conclude that the jury could have rationally found guilt beyond a reasonable doubt. We overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the conviction.

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 25, 2005

Do Not Publish

10