TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-04-00100-CR






Charlene Springer, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT

NO. 52,577, HONORABLE JOE CARROLL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Appellant Charlene Springer appeals her conviction for misapplication of fiduciary
property in an amount over $20,000 and under $100,000. See Tex. Pen. Code Ann. § 32.45 (West
Supp. 2004-05). Appellant complains that the evidence was legally and factually insufficient to
support the jury's finding that she misapplied property, which is an essential element of the offense
charged. We hold the evidence is sufficient to support the jury's finding and affirm the conviction. 


BACKGROUND


 Appellant was the store manager at Cash in a Flash, a check-cashing store in Temple,
Texas. James Knight, the owner of Cash in a Flash, testified that there are five rules that all store
employees must follow when cashing checks: (1) the person presenting the check must have a valid
government-issued picture ID; (2) every check must be verified before it can be cashed, either by
finding a record of successful checks from the issuing company in the store's log or by calling the
company to verify that the check was written for the amount and to the person cashing it; (3) all
checks for $2,000 or more must have owner approval before cashing; (4) checks may be cashed only
by the person to whom the check is made out; and (5) checks for more than $3,000 may be cashed
only if a social security card is presented and photocopied.

 Knight also requires store employees to photograph the person cashing the check, the
check, and a valid government-issued picture ID with a camera installed in the store. Knight
maintains records of the photographs taken with every check cashed and copies of social security
cards photocopied for checks over $3,000. Knight trained appellant for one month on the store's
policies and spent two days a week in the store to make sure the rules were being followed. 

 On or about August 2, 2001, appellant paid on four fraudulent checks. (1) For ease of
analysis, we will refer to the four checks by the last name of the person who cashed them: Smith,
Willis, Johnson, and Scott. The record of the Smith check for $3,040 contains a photograph of Ms.
Smith and her check and a photocopy of her social security card. No photo ID card was
photographed for Ms. Smith. The record of the Willis check for $3,728.23 contains a photograph
of Ms. Willis and her non-government-issued ID card and a photocopy of her social security card. (2) 
The record of the Johnson check for $7,000 contains a photograph of Mr. Johnson and his non-government-issued ID card and a photocopy of his social security card. The record of the Scott
check for $8,000 contains a photograph of Mr. Scott and his non-government-issued ID card and a
photocopy of his social security card. The ID cards photographed with the Scott, Willis, and Johnson
checks did not resemble any type of government-issued ID cards, but were identical to each other. 
The Smith, Willis, and Johnson checks had tracking numbers identical to those of valid checks in
the store's file. The word "Illinois" was misspelled as "Illinols" on the Willis check. The issuing
company's name was misspelled on the Johnson check. Appellant did not receive permission from
Knight before cashing three of the checks, and the record is silent as to the fourth. Cash in a Flash
lost $21,786 as a result of the fraudulent checks.


DISCUSSION


 It is undisputed that appellant cashed four fraudulent checks on or about August 2,
2001. Appellant asserts that the evidence is legally and factually insufficient to prove that she
intentionally, knowingly, or recklessly acted contrary to her agreement with Knight when she cashed
the fraudulent checks.

 Appellant was charged and convicted of the offense of misapplication of fiduciary
property under section 32.45 of the penal code: "[a] person commits an offense if he intentionally,
knowingly, or recklessly misapplies property he holds as a fiduciary . . . in a manner that involves
substantial risk of loss to the owner of the property." Tex. Pen. Code Ann. § 32.45(b). For purposes
of this case, a fiduciary is defined as a person acting in a fiduciary capacity or an officer, manager,
employee, or agent performing fiduciary functions on behalf of a fiduciary. Id. § 32.45(a)(1)(C), (D). 
A person "misapplies" property when she "deal[s] with the property contrary to . . . an agreement
under which the fiduciary holds the property." Id. § 32.45(a)(2)(A). For purposes of section 32.45,
an "agreement is a harmonious understanding or an arrangement, as between two or more parties,
as to a course of action." Bynum v. State, 767 S.W.2d 769, 777 (Tex. Crim. App. 1989). The
agreement need not be written nor proved by witness testimony. Id. As discussed below, the
evidence is sufficient to show that appellant and Knight had reached a harmonious understanding
as to the procedure to be followed before a check could be cashed. (3) See id.

 On appeal, appellant argues that the State failed to provide sufficient evidence to
prove beyond a reasonable doubt that appellant recklessly dealt with the property contrary to her
agreement with Knight. Appellant claims that the fact that she was working in the store at the time
and cashed the checks establishes neither guilt nor intentional, knowing, or reckless misapplication
of Knight's property. She claims that the State's evidence is circumstantial and therefore legally and
factually insufficient to support a conviction. However, "the absence of direct evidence does not
mean the State's case is weak. Circumstantial evidence often has equal or even greater probative
value than direct evidence." Goodman v. State, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001).

 In her brief, appellant uses the term "misappropriate" interchangeably with the term
"misapply." These terms, however, are not interchangeable. Misappropriation is "[t]he application
of another's property or money dishonestly to one's own use," Black's Law Dictionary 1013 (7th
ed. 1999), whereas misapplication occurs when a person "deal[s] with the property contrary to . . .
an agreement under which the fiduciary holds the property." Tex. Pen. Code Ann. § 32.45(a)(2)(A). 
Appellant confuses the meanings of these terms in her brief. First, appellant contends that the
evidence does not establish that she had the requisite mens rea to either intentionally or recklessly
"misappropriate" property from Knight because there was no evidence that appellant knew any of
the individuals who cashed the checks or received any benefit from cashing the checks. Neither
complicity with the perpetrator nor benefit from the property is an element of misapplication of
fiduciary property, the crime of which appellant was convicted. See id. § 32.45. Benefit from the
property is, however, included in the definition of misappropriation. Further, appellant asserts that
the State "failed to prove that the appellant was involved in any copying of information off the
checks, making the checks herself or in concert with others, or obtained any benefit at all in the
cashing of any check." This argument is not directly relevant to any of the elements of
misapplication, but would be relevant to a discussion of misappropriation. We will, however,
address these arguments as far as they bear upon appellant's mens rea with regard to the
misapplication of Knight's property.


Legal Sufficiency

 In reviewing the legal sufficiency of the evidence to support a criminal conviction,
the court views "the relevant evidence in the light most favorable to the verdict [to] determine
whether any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt." Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The jury, as trier of
fact, is "the exclusive judge of the credibility of witnesses and of the weight to be given their
testimony. Likewise, reconciliation of conflicts in the evidence is within the exclusive province of
the jury." Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (internal citations omitted). 
Any inconsistencies in the evidence should be resolved in favor of the verdict. Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and
circumstantial evidence. Barnes v. State, 62 S.W.3d 288, 297 (Tex. App.--Austin 2001, pet. ref'd).

 Appellant attacks the legal sufficiency of the evidence to support the jury's finding
that she intentionally, knowingly, or recklessly acted contrary to an agreement with Knight by
cashing the fraudulent checks. There is evidence that appellant broke the first rule of the agreement,
that employees must obtain a valid government-issued picture ID card from every person who wants
to cash a check. Appellant did not photograph an ID card with the Smith check, although she argues
that the State's evidence does not rule out the possibility that she checked the ID and merely forgot
to photograph it. For the Johnson, Willis, and Scott checks, appellant accepted and photographed
unofficial, non-government-issued ID cards in violation of the rule. Based on testimony by another
Cash in a Flash employee who cashed one check without obtaining government-issued ID, appellant
contends that the government-issued ID requirement was not part of the agreement. However,
evidence that the rule had not been consistently followed in the past does not negate the existence
of an agreement to follow the rule. There is other evidence supporting the inclusion of this rule in
her agreement with Knight: Knight and another Cash in a Flash employee testified that government-issued picture ID cards are required from anyone wishing to cash a check; the employee who had
broken the rule testified that taking a non-government-issued ID card as identification was a mistake
and against the rules; and appellant had previously followed the rule.

 The jury also heard evidence that appellant broke the third rule of the agreement, that
employees must obtain Knight's permission before cashing checks for more than $2,000. Knight
testified that appellant failed to call him before cashing any of the fraudulent checks. After
presenting evidence that Knight does not keep a log of such calls, appellant argued that the evidence
that she violated this rule was legally insufficient. The jury evaluates credibility and can believe any
or all evidence. See Jones, 944 S.W.2d at 647. Viewed in the light most favorable to the verdict,
a rational trier of fact could have relied on Knight's testimony to find that this requirement was
breached. See Johnson, 23 S.W.3d at 7.

 Appellant also argues that the evidence was legally insufficient to support the jury's
finding that she had the requisite mens rea to commit the offense; however, viewed in a light most
favorable to the verdict, the evidence supports the jury finding that she had the requisite mens rea. 
First, Knight trained appellant on the accepted check-cashing procedures for a month, and she had
previously followed each rule with regularity. Second, Knight testified that appellant failed to call
him before cashing the fraudulent checks, despite the fact that she had previously sought his
permission to cash large checks several times each week. Third, despite the fact that appellant had
previously acquired valid identification from customers, the ID cards appellant accepted with the
checks were not government-issued and did not resemble any type of government ID. Fourth, three
of the fraudulent checks were cashed in quick succession by persons bearing the same kind of
unusual non-government-issued IDs. Fifth, all of the photographs accompanying the fraudulent
checks were of unusually poor quality that prevented identification of the perpetrators, despite the
fact that appellant's previous photographs had been of better quality. Finally, the Smith, Willis, and
Johnson checks had tracking numbers identical to valid checks in the store's file. Although this
information could have been obtained in other ways, viewed in the light most favorable to the
verdict, we find that a rational jury could have believed that the information was copied and
distributed to the check cashers by a store employee.

 Viewing all the evidence in the light most favorable to the verdict, we find a rational
trier of fact could have found that appellant intentionally, knowingly, or recklessly acted contrary
to her agreement when she cashed the four fraudulent checks. The evidence is legally sufficient to
support the verdict. We overrule appellant's first issue.


Factual Sufficiency

 Appellant next attacks the factual sufficiency of the evidence to establish: (1) breach
of the agreement, and (2) the requisite mens rea. The only question to be answered in a factual-sufficiency review is whether, considering all of the evidence in a neutral light, the jury was
rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004). The jury is not rationally justified in finding guilt "when considered by
itself, evidence supporting the verdict [is] too weak to support the finding of guilt beyond a
reasonable doubt" or when "the contrary evidence [is] strong enough that the beyond-a-reasonable-doubt standard could not have been met." Id. at 484-85. We defer to the trier of fact on issues
involving the weight and credibility of evidence. Id. at 481; see Johnson, 23 S.W.3d at 7. The
verdict should be set aside where the jury verdict is "clearly wrong and manifestly unjust." Zuniga,
144 S.W.3d at 481 (defining "manifestly unjust" verdict as one that shocks the conscience or clearly
demonstrates bias).

 As discussed earlier, there is evidence that appellant broke the first rule of the
agreement by not photographing an ID card for the Smith check and by accepting unofficial, non-government-issued ID cards for the Johnson, Willis, and Scott checks. There is also evidence that
appellant broke the third rule by failing to call Knight before cashing any of the fraudulent checks. 

 Appellant contends that the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met. Based on evidence that another employee had
once cashed a check without obtaining valid government-issued ID, appellant asserts that the
government-issued ID requirement was not part of the agreement. However, as stated above,
evidence that the rule had been broken in the past does not negate the existence of an agreement to
follow the rule, and there is other evidence supporting this element of the agreement. With regard
to the absence of a photographed ID card in the Smith record, appellant argues that the evidence is
insufficient to disprove the possibility that she checked Smith's ID card but merely forgot to
photograph it. However, the jury, not the reviewing court, accepts or rejects reasonably equal
competing theories of causation. Goodman, 66 S.W.3d at 287. Appellant disputes Knight's
testimony that appellant did not receive permission to cash the checks with evidence that Knight
does not keep a log of such calls. However, the fraudulent checks were large and cashed sequentially
and the $8,000 Scott check was one of the largest the store had ever cashed. Therefore, it is
reasonable to believe that Knight would remember giving appellant permission to cash the checks. 
Viewed in a neutral light, the supporting evidence rationally justifies a finding that appellant
breached her agreement with Knight, and the contrary evidence is not so strong as to require setting
aside the jury verdict as clearly wrong and manifestly unjust. See Zuniga, 144 S.W.3d at 484-85. 

 Appellant also contends that the evidence is factually insufficient to support the jury's
finding that she had the requisite mens rea to commit the offense. However, viewed in a neutral
light, the record contains ample evidence to support the jury's verdict. The jury heard evidence that
appellant broke Knight's rules to cash the fraudulent checks despite the fact that she had previously
followed them. Several of the checks had identical tracking numbers to valid checks in the store's
file. Three of the fraudulent checks were cashed by persons bearing the same kind of unusual non-government-issued ID cards, and each of the photographs accompanying the checks were of poorer
quality than previous photographs.

 The points appellant raises are simply alternative theories of causation or explanations
of appellant's intention and actions while cashing the fraudulent checks. However, it is the jury, not
the reviewing court, that accepts or rejects reasonably equal competing theories of causation. See
Goodman, 66 S.W.3d at 287. Appellant does not state why the jury's finding is factually
insufficient, nor does she explain how the jury's verdict is manifestly unjust, shocks the conscience,
or clearly demonstrates bias. See id. Further, appellant does not explain why the contrary evidence
greatly outweighs the evidence in support of the verdict. See id. We hold that the evidence was
factually sufficient to support the jury's finding that appellant intentionally, knowingly, or recklessly
breached her agreement with Knight. Reviewing the evidence, we conclude that the jury could have
rationally found guilt beyond a reasonable doubt. We overrule appellant's second issue.


CONCLUSION


 Having overruled both of appellant's issues, we affirm the conviction.



 

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 25, 2005

Do Not Publish
1. Although the record and briefs discuss an additional set of fraudulent checks cashed by
appellant in mid-July 2001, those checks are not at issue on appeal as they were not included in the
jury charge.
2. Ms. Willis's social security card was later discovered to be fraudulent.
3. Appellant does not dispute the existence of an agreement with Knight. She does argue,
however, that receiving a government-issued picture ID card with every check was not a part of their
agreement. This issue is addressed below.